BOTELER AND BELT *vs.* THE STATE *use of* H. M. and P. CHEW, *use of their creditors, &c.—December,* 1836.

When the existence of a record of a court is put in issue on the plea of *nul tiel record*, in proceedings of the same court, it should be proved by the production of the record itself for inspection by the judges; and when the record denied by the issue is of another court, it is to be proved by the production of an exemplification of it.

It is the practice of the courts in this *State*, to decide on the plea of *nul tiel record* of the same court, not by inspection of a record actually made up and produced; but on an inspection of the docket entries, minutes of the court's proceedings, original papers, &c. on file in the cause, the judgment or decree in which is put in issue, treating them as the record of the court; which practice this court is not disposed to disturb.

The duty required of clerks and registers by the seventh section of the act of 1817, ch. 119, to make up the records of the judgments, &c. therein men-

tioned within twelve months, was not to give validity to such judgments, &c. but for security, and to furnish the ready and convenient means of evidence in other courts.

Upon the trial of the issue of *nul tiel record*, a file of papers and proceedings which had originated on the equity side of *Prince George's* county court, but which were subsequently removed to the court of Chancery, under the act of 1831, ch. 309, were offered by the plaintiff in support of his replication, averring them to be proceedings of the county court; and it not appearing that any action had been had upon them by the chancellor, or that they had been recorded in either court. It was *held*, that they were properly pleaded as proceedings of the county court; and that it was competent for the court, before whom they were so produced, by inspection, to ascertain and determine if they were the genuine original papers and proceedings of that court, stated and referred to in the replication.

In an action upon a bond, given by a trustee appointed by the decree of a court of equity, for the sale of certain mortgaged premises; it was held upon demurrer, that a replication alleging that the auditor had, under an order of the court, reported a certain sum to be due to the creditors of *H. M. C. & Co.* which the court had directed to be paid accordingly, and when the creditors were neither named in the report of the auditor, the order of the court or the replication, nor the amount to be paid to each, that the replication was ill, and that no judgment could be rendered thereon for the plaintiff.

The auditor in his account, should have set out the proper names of the creditors of *H. M. C. & Co.* and the amount to which each was entitled, and the replication (supposing the creditors competent to sue jointly,) should have done the same thing.

In pleadings on the part of plaintiffs, "certainty to a certain intent in general," is required, as well in relation to the parties as the subject matter, that the defendant in a subsequent action may be enabled to plead it in bar.

This was an appeal from *Prince George's* county court, and originated in an action of *debt*, brought on the 19th April, 1832, in the name of the *State*, against *Edwin M. Dorsey, Alexander H. Boteler*, and *Edward W. Belt*. The plaintiffs declared on the bond of the above parties sealed the 7th August, 1830, reciting, that by a decree of *Prince George's* county court, bearing date the 27th July, 1830, the said *Edwin M. Dorsey* was appointed trustee to sell certain real estate, the property of *Walter B. Brooke*, mortgaged to a certain *Lucy S. Brooke*, for the purpose of paying said mortgage debt; and containing the usual condition that the trustee would discharge his duty and obey the orders of the

court in the premises. After *oyer*, the appellants pleaded performance generally by the trustee, and the plaintiffs replied as follows:

" That after the making of the aforesaid writing obligatory, and before the impetration of the writ original in this cause, such proceedings were had in the cause in the said writing obligatory and the condition thereof mentioned, and in execution of the decree in said cause therein also mentioned, that on the petition of *Philemon Chew*, on the behalf of the creditors of himself and *Henry M. Chew*, theretofore trading and carrying on merchandise, under the style and firm of *Henry M. Chew & Co.* made to the honourable *Prince George's* county court as a court of equity, and filed in the aforesaid cause in the said writing obligatory, and the condition thereof mentioned, it was on the 14th January, 1831, by the said court, amongst other things adjudged, &c.; that the auditor of the said court state an account between the mortgaged estate in the proceedings in the said cause mentioned and the said *E. M. Dorsey*, the trustee, and apply the balance of the proceeds of sale of said estate after payment of certain claims, incumbrances, and charges, to the discharge and extinguishment of the judgment in the said petition mentioned, and other debts, if any, of a similar grade, &c. And afterwards, to wit: on the 9th January, 1832, the said auditor in obedience to the said order, reported to the said court sundry accounts, whereby amongst other things, there was made due and payable to the aforesaid creditors of *Henry M. Chew & Co.* in satisfaction of the judgment in the aforesaid petition and order mentioned, the sum of $932 54, to be paid by the said *E. M. Dorsey*, as trustee, out of the aforesaid balance of the proceeds of sale of the said estate; and afterwards, to wit: on the 17th April, 1832, by the said county court as a court of equity, it was adjudged and ordered, that the aforesaid report of the auditor be ratified and confirmed, and that the said *E. M. Dorsey* pay over to the said creditors of the said *Henry M. Chew & Co.* the amount appearing to be due to them by the aforesaid auditor's report, as by the record of

46      v.8

the aforesaid proceedings in said cause now remaining in said court will appear. And the said *State* further says, that afterwards, to wit; on, &c. at, &c. that the aforesaid creditors of *Henry M. Chew & Co.* presented a copy of the last aforesaid order of the said court and of the auditor's report to the said *E. M. Dorsey,* and then and there requested the said *E. M. Dorsey* to pay unto them the aforesaid sum of money which he was so as aforesaid by said court ordered to pay unto them, nevertheless, &c.

To which the defendants rejoined as follows :.

1. That there is not any such record of a decree, and of the proceedings in the first suit mentioned in said replication, as the said plaintiff hath alleged, &c.

2. That there is not any such record of a judgment against *Walter B. Brooke,* in said replication mentioned, obtained by *H. M. Chew* and *Philemon Chew* for the use of their creditors on record remaining in *Prince George's* county court as, &c.

3. That after the audit as aforesaid in the replication mentioned, the said *H. M. Chew* and *P. Chew* for the use of their creditors, sued out of *Prince George's* county court, returnable to April term, 1830, of said court, a writ of *fieri facias* to the sheriff of said county to be directed, commanding him that of the goods, &c. of the said *Walter B. Brooke* and certain *William A. Hall* and *John Brooke,* (who were the securities of said *Walter B. Brooke,*) he should make the amount of said judgment so referred to as aforesaid to the auditor as aforesaid, that upon such writ of *fieri facias* such proceedings were had, that the then sheriff of the county aforesaid to whom the said writ was directed, did levy, of the goods, &c. of the said defendants to make the amount of said judgment, and did then and there return that he had so levied, and that the property remained in his hands not sold for want of buyers, as by reference to the said judgment obtained by *Henry M. Chew* and *Philemon Chew,* (for the use of their creditors,) and the writ of *fieri facias* aforesaid, and the return thereto of record in the court aforesaid will appear. By reason of which said premises the said plaintiffs elected to claim the

amount of their judgment aforesaid to be recovered at law, and the property on which said *fieri facias* was levied as aforesaid, still remains in the hands of the sheriff as aforesaid, answerable for said judgment, and the said *Henry M. Chew* and *Philemon Chew*, and the creditors for whose use the said judgment was rendered, have relinquished their claims upon the funds arising from the sale of the real estate as aforesaid, and this, &c.

4. That the creditors of said *Henry M. Chew* and *Philemon Chew*, for whose use the said judgment was entered, and who by the audit aforesaid and the confirmation thereof by the court, as is stated in the replication have been satisfied, the sum of money so allowed to them by the proceedings aforesaid, and this, &c.

5. That the creditors of *Henry M. Chew* and *Philemon Chew*, for whose use the said sum of money in the replication set forth was reported and allowed, never did give *notice* to the said *Dorsey*, that the said sum of money had been allowed to them in the suit set forth in said replication as in the said replication is alleged, and never did demand payment of the same by the said *Dorsey*, to the said creditors of *Henry M. Chew* and *Philemon Chew*, and this, &c.

6. That the said *Edwin M. Dorsey* never did receive any part of the said proceeds of sale as trustee as aforesaid, sufficient to pay and discharge the sum or any part thereof which was directed to be paid by the said order of *Prince George's* county court, sitting as a court of equity, and this, &c.

To which rejoinders the plaintiffs surrejoined as follows :

To first, third, fourth, and fifth rejoinders, a denial of the facts with a tender of an issue in which the defendant joined.

To the second and sixth rejoinder, a general demurrer and joinder.

The county court rendered judgment for the plaintiff on the demurrers.

Upon the trial of the issues of fact the defendant took the following exceptions :

1st EXCEPTION.—In the trial of the issue joined in this cause, upon the first plea of *nul tiel record*, the plaintiff to maintain the issue joined on his part and to prove to the court, that such proceedings were had as stated in his replication, offered in evidence to the court certain papers, which purported to be the proceedings in a suit originally brought into this court as a court of equity, wherein *Lucy S. Brooke,* was the complainant, and *Walter B. Brooke*, the defendant; and which suit after certain proceedings were had, was transmitted to the court of Chancery, at the instance of the persons for whose use this suit is brought, and by others.   Papers, which he stated and offered to prove were the original papers in the said suit; he offered to prove the filing of said bill, the decree, trustees' report, petition of *Henry M. Chew & Co.* auditor's report, and orders thereon.   To the admission of said papers, or any of them, the defendants by their counsel objected, and insisted that it was incumbent on the plaintiff to prove the said record, by the production of the record of this court, to which they refer in their replication.   The plaintiffs thereupon by their counsel, offer proof to the court, that neither the proceedings in the suit aforesaid, in this court as a court of equity, as before stated, nor any part of them ever were recorded by the clerk of this court, but the papers therein without having been recorded, were transmitted to the court of Chancery, in virtue of an order of this court, dated the — day of —, 1834, that he had applied to this court during the present term, and obtained an order, that the clerk of this court should issue the following *subpœna duces tecum.* (Here followed the *subpœna* to *Ramsay Waters, Esquire*, to produce the papers in said cause and to testify, &c.)

Which *subpœna duces tecum* was accordingly issued, but has not been returned by the sheriff of *Anne Arundel* county, and the plaintiff did not prove or pretend that the said *subpœna duces tecum*, was delivered to the sheriff, or served by him, but offered to prove, that it was delivered to one *Jonathan Pinkney*, with a request to deliver it to the register of the court of chancery.   There was no proof that the said *Pinkney* delivered said writ, or that it was served on said register, other

than it was given in evidence, in the trial of the issue by one *Philip Thomas*, a clerk in the office of the register, who appeared at the trial with the aforesaid original papers, purporting to be the original papers in the aforesaid cause in equity, and the said *subpœna duces tecum*, and proved that the same were delivered to him, by the said register, with directions to produce the same in court. The register of the court of Chancery did not appear and bring with him the papers aforesaid required by said *subpœna*, and no proof was offered that the proceedings in the said suit, originally brought in this court, sitting as a court as before stated, had not been recorded in chancery. The defendants by their counsel objected.

1. That the said papers were inadmissible to prove the record which is put in issue on the first plea of *nul tiel record;* and contended that no such *subpœna duces tecum* ought to have been issued, and that said papers ought not to be, and could not legally be brought into this court, that the plaintiff to maintain the issue aforesaid joined by him, on the first plea of *nul tiel record*, must produce the record which he sets forth in his replication to be in this court, and cannot prove the non-existence of the records, and then produce those papers to support the issues on his part.

2. That if the papers belonging to said suit could be admitted in evidence in this cause, still it does not and cannot appear to this court, that all the papers belonging to the case aforesaid, are now in the bundle produced and offered in evidence to the court.

3. That nothing but the production of the record, or a transcript of the proceedings verifying the matters now in issue can legally be offered by the plaintiff to the court, and warrant the court in giving judgment for the plaintiff, upon the issue as aforesaid, now to be tried by the court.

But the court over-ruled said objection, and it appearing to the court, by inspection of the papers aforesaid, that the matters set forth in the replication, and denied by the *first* plea of *nul tiel record* are true.

The court (*Stephen, Ch. J.* and *Key, A. J.*) thereupon and

without the production of any record, or transcript of a record, admitted the said papers in evidence, and gave judgment for the plaintiff upon the issue aforesaid. The defendants excepted.

2d EXCEPTION.—Amongst other papers offered in evidence as stated in the first exception, which is made part of this, was an order of *Prince George's* county court passed in the said cause, in the words following, to wit: which was written upon the aforesaid petition set out in the replication, and was proved in fact to have been passed on the 14th of *January*, 1831.

"*Lucy S. Brooke*     ⎫   In *Prince George's* county court,
      vs.          ⎬  as a court of chancery, upon the
*Walter B. Brooke.*  ⎭  within petition of *Philemon Chew*, it is this 14th day of January, ordered by the court, that the auditor state an account between the mortgaged estate, in the proceedings mentioned, and the late and present trustee, applying the balance, that will remain of the proceeds of the said estate, after paying off the incumbrances directed to be discharged by the order of *October* term last, as follows, to wit: first, to the extinguishment of the debt due the complainant, with interest and the costs of this suit; and secondly, to the extinguishment of the judgment mentioned in the said petition, and other debts, if any, of a similar grade; and he is hereby directed, to take into his consideration, a judgment of *John Contee* and *William D. Bowie*, a copy of which is to be found among the papers in this cause; and the balance, if any, to distribute among the creditors of the said defendant according to the principle laid down by this order. The auditor is further hereby instructed and directed, to vary his statement, distributing the surplus aforesaid, according to the views and suggestions of any other creditor or creditors of said defendant, and also as he himself may think it ought to be stated.                           EDMUND KEY."

And the defendants thereupon insisted, that the said order materially varied from the order which is averred in the said replication to have been passed on the said petition, and does not support the matters set forth in the replication, the verity

of which is now to be tried. The plaintiff also offered in evidence the following order. "*Prince George's* county court, April 17th, 1832. Ordered by the court sitting as a court of equity, that the within report of the auditor be, and the same is hereby ratified and confirmed, and that *Edwin M. Dorsey*, the trustee, is hereby directed and required to pay over to the creditors of *Henry M. Chew & Co.* the amount appearing to be due to them by the within report of the auditor.                                        EDMUND KEY.

The defendants, by their counsel, objected that the same materially varied from the order which is averred in the replication, but the court (*Stephen, C. J. and Key, A. J.*) over-ruled said objections and were of opinion that there was no variance between the said orders as set forth in the said replication, and those produced in evidence. To which opinions of the court the defendants by their counsel excepted.

3d EXCEPTION.—In the trial of this cause the defendants to maintain the *third* issue joined on their part, offered in proof to the jury the judgment obtained by *Henry M.* and *Philemon Chew*, use of their creditors (for whose use this suit was instituted,) in an action at law, in *Prince George's* county court, upon the claim for the non-payment of which this suit is brought, and recovered at April term, 1829, of *Prince George's* county court, against the said *Walter B. Brooke*, that the said judgment was superseded by *William A. Hall* and *John Brookes*, and that afterwards there was issued a *fi. fa.* on said judgment against the said *Walter B. Brooke* and his securities on the said *supersedeas*, returnable to April term, 1830, which was returned by the sheriff of *Prince George's* county court "laid as per schedule and not sold for want of buyers." The defendants further proved by the schedule of the sheriff in said writ of *fi. fa.* that the property levied upon under the same, was the property of the superseder, *John Brookes*, that sundry writs of *vendi. exp.* were issued upon the said judgment, the last of which was returnable to the ———— term of *Prince George's* county court, 183–, and that prior to the return day of the same, and

whilst the same was in the hands of the sheriff, the amount of said judgment was paid to *John Johnson*, the attorney of the plaintiffs in this action, by *John Brookes*, the superseder of the same, as aforesaid, and which said payment was made after the institution of the present suit, and the same thereupon entered for the use of the said *John Brookes*, for whose use the same is now prosecuted. Whereupon the defendants by their counsel pray the court to instruct the jury, that if the above testimony is believed by them, that then they cannot find for the plaintiffs upon the third issue, but the court refused this instruction. The defendants excepted.

4th EXCEPTION.—In the trial of this cause the defendants to maintain the *fourth* issue joined on their part (after the plaintiffs had offered evidence,) of their claim, offered proof to the jury, that *Henry M. Chew & Co.* for whose use this suit is entered, had instituted suit against *Walter B. Brooke*, for the amount of the claim now demanded, and had recovered judgment against him in *Prince George's* county court, which was duly superseded, and *John Brookes*, for whose use the suit is now entered, was one of the securities in said supersedeas; that afterwards the plaintiff issued out execution against the principal and the securities in the *supersedeas*, and the amount of said execution was settled by said *Brookes*, with *John Johnson, Esq.* the plaintiffs' attorney, some time after the institution of this suit; whereupon the defendants by their counsel pray the court to instruct the jury, that if they are satisfied from the evidence offered, that the amount of this claim was settled as aforesaid by *John Brookes*, after the institution of this suit, then the plaintiffs are entitled to their verdict on the fourth issue in this cause. But the court refused to give the instruction. The defendants excepted.

5th EXCEPTION.—At the trial of this cause the plaintiff to support the *fifth* issue joined on his part, and to shew that a notice had been given to *Edwin M. Dorsey*, the trustee aforesaid, and that a demand of the money which had been ordered to be paid to the creditors of *Henry Chew & Co.*

by the county court as a court of equity aforesaid, had been made of the said *Dorsey*, before the institution of this suit, proved by *John B. Brooke*, (who is an attorney of this court,) that on the 4th day of May, in the year 1832, aforesaid, he called upon the said *Dorsey*, and shewed him a copy of the order of this court as a court of equity, requiring him to pay to the creditors of *Henry M. Chew & Co.* the amount of the aforesaid judgment, and that he, the said *Brooke*, demanded of the said *Dorsey*, payment thereof, who made no objection to the authority of him, the said *Brooke*, to make said demand, observing only, that he, the said *Dorsey*, had anticipated, that such an order would be passed, and was sorry that he was not in a situation or able to pay the sum of money thereby directed to be paid. And the said *Brooke* also proved, that before the time of making the said demand, he the said *Brooke*, had been requested by *John Johnson, Esq.* to assist him, the said *Johnson*, in bringing to a close all of the unsettled business in *Prince George's* county court, in which he, the said *Johnson*, was professionally concerned, which he, the said *Brooke*, had agreed to do, and in virtue of this agreement, his, the said *Brooke's* name, had been associated with the said *Johnson's* in most of the cases, which the latter had upon the docket of the said court, and in the case of the particular judgment herein before referred to, the name of the said *Brooke* had been entered as the attorney of the plaintiffs, upon the docket of said court, for April term, 1831, which fact also appeared by the production of the docket for that term. The plaintiff further proved, that the writ in this cause was issued upon the order of the said *Brooke*, who has always continued to prosecute the same; and also offered in evidence the original petition filed in the cause in equity, of *Lucy S. Brooke* against *Walter B. Brooke*, which is herein before referred to, and proved that the same is in the hand-writing of said *John B. Brooke*, and signed by him, and that the order is also in his hand-writing, and was passed by the court upon his motion, and the said *John B. Brooke* further proved, that he filed said petition and the said judgment as an

exhibit with it, because *Richard H. Brookes,* then the auditor of said court as a court of equity, when he was about to audit certain claims against the estate of the said *Walter B. Brooke,* and which had been filed in the before mentioned equity case, of *Lucy S. Brooke* against the said *Walter B. Brooke,* stated to him, the said *John B. Brooke,* that the judgment in question, had not been filed as a claim in said suit, and that *John Brookes,* the brother of him, the said *Richard H. Brookes,* who was bound as a surety for the said judgment required it to be done as an act of justice to him, the said *John Brookes,* and that if it was not done, he would take advantage of the failure or neglect to do so if he could, by resorting to a court of equity for relief against the judgment.    The said *John B. Brooke* further proved, that *Messrs. Aldridge & Higdon,* or *Aldridge, Higdon & Co.* who were creditors of the said *Henry M. Chew & Co.* knew that he, the said *Brooke,* had been employed as aforesaid by the said *Johnson,* as he had, subsequently to the time of his being so employed, an interview with one of the firm, in which the circumstance was mentioned.    The defendants then proved by *John Johnson,* formerly an attorney also of this court, that the claim of *Henry M. Chew & Co.* against *Walter B. Brooke,* the amount of which was, by the order of said court as a court of equity aforesaid, directed to be paid to the creditors of the said *Henry M. Chew & Co.* was with a number of other claims put into his hands as an attorney, to be collected, by suit or otherwise, and by agreement and direction of said *Henry M. Chew & Co.* the moneys due thereon when collected were, by said *Johnson,* to be distributed among the creditors of the said *Henry M. Chew & Co.*    That the creditors for whose use the said claims, (including the one against *Walter B. Brooke,* as aforesaid,) were placed in the hands of the said *Johnson,* being numerous, he the said *Johnson,* instead of entering the suits for the use of the said individuals, among whom the money, when collected, was to be distributed, directed the said suits, including the one against the said *Walter B. Brooke,* to be entered for the use of the creditors

of the said *Henry M. Chew & Co.* That the said creditors never filed their claim in the suit in equity aforesaid, but relied on and proceeded against the said *Walter B. Brooke,* and his sureties, in a supersedeas, (one of the said sureties being the said *John Brookes,* for whose use the present suit is now entered,) and were proceeding against them until the month of December, 1832, when the said *John Brookes,* as surety aforesaid, gave to the said *Johnson* his note, for the amount of the claim of *Henry M. Chew & Co.* against the said *Walter B. Brooke ;* which was accepted by said *Johnson,* and by his direction this suit was thereupon entered for the use of the said *John Brookes,* intending by said entry, to give to said *John Brookes* all the benefit of said judgment, to which the original plaintiffs were entitled, before the said *John Brookes* had passed his note as before stated, to the witness. And the said *Johnson* further stated, that although the claim against the said *Walter B. Brooke* was not filed by the creditors of *Henry M. Chew & Co.* yet he was aware that a proceeding was had in the equity case aforesaid, for the purpose of having the said claim paid out of the fund in that court, in which he acquiesced, though he considered said proceeding as intended to protect the interests of the said *John Brookes ;* he further states, that *John B. Brooke, Esq.* who has been examined, as a witness, and by whom the claim was filed, had general instructions from him, to appear in all the cases in which he, *Johnson,* had been professionally concerned, and to adopt such proceedings as to him, *Brooke,* might appear necessary for the interests of his (*Johnson's*) clients. Whereupon the defendants, by their counsel, prayed the court to instruct the jury.

1. That the jury must be satisfied from the evidence, that before the institution of this suit a demand was made of the amount now claimed of the trustee, either by the creditors of *Henry M. Chew & Co.* or by some person authorized by them to demand and receive the same.

2. That the petition filed by *Philemon Chew,* on behalf of himself and *Henry M. Chew,* and the creditors of *Henry M. Chew & Co.* being the petition before recited, and the pro-

ceedings of the court of equity, grounded as aforesaid, upon said petition, and the before recited testimony of *John B. Brooke* and *John Johnson*, do not prove that the said *John B. Brooke* was authorized to demand and receive from the trustee, the sum which by the order aforesaid the trustee was directed to pay to the creditors of *Henry M. Chew & Co.*

But the court (*Stephen,* Ch. J. and *Key, A. J.*) refused to give the *second* part of the instruction, and were of the opinion that from the proof aforesaid, if the jury believe it, they may find that the said *John B. Brooke* was duly authorized to make the demand, and receive of the trustee the money, which, by said order in equity, was directed to be paid to the creditors of *Henry M. Chew & Co.* The defendants excepted.

The verdict and judgment being for the plaintiff, the defendants prosecuted the present appeal.

The cause was argued before BUCHANAN, Ch. J., and DORSEY, ARCHER, CHAMBERS, and SPENCE, Judges.

A. C. MAGRUDER, for the appellants, contended:

1. That the evidence offered by the plaintiff was inadmissible, as a record ought to have been produced. The first exception is upon the plea of *nul tiel record.* The plea refers to the decree in equity, and calls on the plaintiff to show that his record corresponds with his plea. The burthen is upon him. The judgment on the first exception is therefore erroneous. If the plaintiff had counted on the special circumstances, he might have recovered, but the *sole* matter in issue, was the existence of such a record, *as of Prince George's* county court. He could offer no substitute for it under the form of pleading. 1 *Star. Ev. 2 pt.* 150. 3 *Star. Ev. 4 pt.* 1277. Again, the proof offered, was inferior evidence; original papers in chancery cannot be carried from court to court; the register did not attend with those offered, and they were not a record of any court. Before papers can constitute a record, their identity must be proved by the proper officer; and that those offered comprise *all* the papers.

Boteler and Belt vs. The State use of Chew, &c.—1836.

2 Bac. Abr. Wash. Va. Rep. 215. The character of the witness who attended with the papers is not stated, and he could know nothing of them. Even the clerk of the county court, with whom the papers were originally filed, was not sworn. Their origin is not established by proof; their mere production does not establish to what court they first belonged. Hewson vs. Brown. 2 Burr. 1034. The other exceptions are not material.

Upon the demurrer, to the second and sixth rejoinders we may go up to the first error. The plaintiff's declaration and replication do not disclose any person, who has a right to maintain the action, which is fatal. Gould, Plea. 87, sec. 60, 62, parties should be described by their proper names. The rule which requires certainty as to persons, demands this. The originally uncertain description under the order of court relied on here, is not aided by averment. Dashiel et al vs. The Attorney General, 5 Har. and John. 392. And no right accrues until demand upon the trustee. State use Oyster vs. Annan. 1 Gill and John. 450. The person who makes the demand must be authorized to grant a discharge to the trustee. The order relied on is like an order to pay the money to the person entitled to it. A supplemental order is essential to its intelligence. The order is to pay the creditors of Chew, and the replication is that they requested payment. There was no audit to ascertain the several rights. The chancellor alone could do that judicially. The replication is therefore defective in not averring a demand on Dorsey. The petition of Philemon Chew does not alter the question, as a decision upon that could not affect his creditors who were not parties to it.

The 6th plea insists that the trustees never received the money. This is admitted by the demurrer, and is a good defence.

PRATT, for the appellees.

The object of the first exception was to bring up the question, whether the original papers in this cause, which com-

menced in *Prince George's* county court, and was afterwards transmitted to the court of Chancery, can be offered in evidence. That they were original is not disputed. The appellees offered to prove them to be original papers at the time of the objection taken to their admissibility. Under the act of 1817, *ch.* 119, *sec.* 7, the clerk of the county court should have recorded them, which he did not do. When they were transmitted to chancery, the register was under no obligation to record them. They were not proceedings of his office. To require a record then, technically made up, is, in the one case, to make the appellees liable for the default of the county court clerk, and in the other to exact a duty from the register in chancery which the law does not impose on him, and consequently *his* record would not be evidence. The act of 1817, is penal and must be strictly construed. *Wilson & Gibbs vs. Conine,* 2 *John. Rep.* 280. *Buller N. P.* 226. ' If the papers had remained in the county court, they would have been received as the best evidence the case could admit of. An exemplification is only evidence from the inconvenience of admitting the originals, and the nature of the proof offered shows the competency of the original papers. The issue was framed upon their existence. The authority cited from 1 *Star. Ev.* 189, is with the appellees. When the trial is in the me court, it is by inspection; otherwise, when in another court. 1 *Star. Ev.* 254. These papers were transmitted under authority of law. They came attended by a clerk of the register in chancery, and were the only legal evidence of the proceedings of the county court left. The appellants cannot escape from these results except by denying the papers offered to have been originals; and that was conceded by them.

Upon the demurrer to the second rejoinder, the defendants admit they are wrong, but insist on their right to go back to the first error in pleading, which they contend to be in the plaintiff's replication. In this case they are precluded from denying any thing necessary to the validity of the order of court. It ascertains a sum due to the creditors of *Chew &*

*Co.* and that they were entitled to recover it. It is objected, that the creditors are not known, and cannot demand payment of the trustee. The demurrer, admits notice to, and demand of the trustee, which answers the case of the *State use of Oyster vs. Annan.* That the order was not too vague, he cited: *Pate vs. Bacon & Co.* 6 *Mun.* 219. 2 *L. Ray.* 1532. *Butler & Belt vs. State use Bowie & Contee,* 5 *Gill and John.* 520.

ALEXANDER, also for the appellees.

There are but two questions; the others are abandoned.

1. Is the demurrer sustainable upon the plea of *nul tiel record.* This involves the sufficiency of the decree. The circumstances show, that the plaintiffs have sustained an injury. The decretal order is correctly set forth. No valid defence appears upon the pleadings. The objection goes only to the form of pleading. A decree must be pleaded as a record. No other form is known.

2. Was the evidence offered admissible. That proof which alone is attainable must be admissible. The court will not reject the only evidence of which established forms of pleading are susceptible. The place of a lost record may be supplied by proof, and clerical negligence leads to the same result. Original papers may be used in the court of their creation; a copy is for other courts. Yet all cases of judgments pleaded conclude *prout patet per recordum.*

R. JOHNSON, for the appellants, in reply.

The first exception presents two inquiries:

1. Whether under the circumstances which the plaintiff proposed to prove, the papers offered could have been received.

2. Whether the court below, after they received the supplemental proof, decided correctly in favour of the plaintiff on the plea of *nul tiel record.*

The demurrer embraces two inquiries:

1. Whether the plaintiff's replication discloses an action

on this bond, by the averment of any fact, which upon any state of pleadings amounted to a breach of the bond.

2. Whether if, by any form of pleading, the plaintiff could have made the facts stated a breach of the condition; has he made any such statement of a claim on the record.

The consideration of the defendants' exception brings before us, the duties of the clerk of Prince George's county, and the register in chancery. In one branch of the argument the right is predicated upon the hypothesis, that it was the only kind of proof of which the replication was susceptible, and that as the order was passed in execution of the principal decree of July, 1830, and the papers not transmitted from the county court to chancery until 1834, the twelve months allowed under the act of 1817, for making the record had elapsed, and that no record being made, the original papers were the only evidence. I contend that in all causes transmitted to chancery coming within the act of 1817, whether recorded before or not, they must be recorded there, and so must the court construe the register's duty under the act of 1817. In this view, so far as respects the clerk of the county court the twelve months are immaterial. In any other view, if the orders were fit to be recorded, and were ordered to be transmitted immediately after their passage, under the argument on the other side, they could not be recorded at all. Injustice would result to the clerks from the operation of the act of 1831, if the appellees are right. But the court will construe the acts of 1817 and 1831 in connection, and say upon the removal of the cause, the clerk of the county court is discharged from the duty of recording. And if the register is not to record in such a case, then it presents the anomaly that a paper fit for record—required to be recorded—cannot be recorded in any court. Neither by the clerk from whose possession it was taken, nor by the officer to whom it was transmitted. The policy of the *State* demands that the officer who has the possession in fact should hold and record it, and not send it from one county to another when as evidence it was essential. Under the

act of 1831, a clerk could not retain a paper twelve months for record, for then an immediate decision of the cause, contemplated by that act could not be had. The suggestion stops the cause, cuts down the power of the court where the jurisdiction first attached, and sends the cause to another forum for despatch.

In legal contemplation, the act of 1817, after twelve months, considers the proceedings as recorded, otherwise a record made after twelve months would be no record. The term is only a direction to the officer prescribing his duty—to insure his punctuality. It does not bear on the validity of the record.

The act of 1831, makes a cause removed with reference to chancery, a case originating in that court. The decision in *Strike and McDonald,* does not impugn this view; there the time for an appeal had expired before the cause was removed, and the chancellor proceeded as if the cause had originated before him. This practice was sustained, and shows that the papers could only be recorded in chancery.

When a record is involved, the whole record must be produced. We are not to have two records of the same cause, made at separate stages. The act of 1817, in the selected cases requires all papers to be recorded. Insisting that the cause, ought to have been recorded in chancery—there is no pretence of evidence in the plaintiff's offer of proof, that it was *not* recorded in chancery. The presumption is, that it was then recorded, and thence a record might be, and ought to have been produced.

All the orders are to be read as the orders of the chancellor. The act of 1831, makes them his by adoption. *Prince George's* county court are strangers to the cause after its transmission to chancery—it ceases to be a record of the transmitting court, and the question presented under the exception then is, can a court, upon the plea of *nul tiel record,* with reference to the judgment of another court, act upon the original papers, and is their inspection proof that they are the papers of another court? A court can inspect its own rolls,

48     v.8

but the record of another court can only be proved by an exemplification.

The exception not only embraces the question of the admissibility of the evidence, but the effect of the evidence *per se.* The order of the proof is not material. *Davis vs. Calvert,* 5 *Gill and John.* 269.

This exception also brings up the question of the identity of the record averred, and the one offered in proof. This is a question of variance, and is still open. The fact of the order of 1831, is not in issue, but that at the time of pleading, the record was one of *Prince George's* county court. If we are right as to the construction of the act of 1817, that after removal the record became a chancery record, the plea is erroneous. The register's exemplification would have maintained it as a record of chancery, and no averment that it was a record of *Prince George's* county court could be maintained.

The rule cited from *Bacon Abr.* never existed in *Maryland* since the act of 1817; from that time chancery became a court of record.

The same kind of proof required upon such a plea, in any one of the courts of this *state,* must be required in them all. If original papers were necessary in *Prince George's,* because not recorded there, and could not be recorded in chancery, then original papers must be carried over the state which would lead to great confusion in practice. *Ayres vs. Grimes,* 3 *Har. and John.* 95.

Upon the demurrer, he contended: The error of the appellees' argument was, in considering the trustee a party to any such order as the one in this cause. An error announced in the case of *Oyster and Annan.* A trustee is not a defaulter until demand, not being a party to the order. That case also decides, that the giving the bond does not constitute the cause of action. The bond is contingent. The state has no right to sue, unless she shows herself, or some named party, interested in the bond. Then the pleader must state the cause of action intended to be recovered, and the certainty which is required to free the pleadings from substantial defects,

relates to the party as well as to the cause of action. The same principle runs through the whole law, to reduce the matter in issue to a certain clear and designated point. The court must know who are the litigant parties. The *cestui que use* of the suit is not only the plaintiff as to the cause of action, but it is against him, the defendant has his remedy for costs. How can the creditors of *Chew* be liable. What property, what person is answerable. If by any form of pleading, the order of the court can be recovered on, there is no averment to show who are the creditors of *Chew*, and the objection goes to the cause of action. Neither could the defendants defend themselves against a second action on the decree, by pleading payment. It would involve him in as many distinct issues as there may be creditors; force him into various inquiries, all foreign to the spirit of the common law. The effect of this decree is, that the trustee shall pay those thereafter ascertained to be creditors of *Chew*. It leaves open the inquiry, who are the creditors and their rights, *inter se*, and consequently as this ascertainment has not been made, no averment to that effect, there is no right of action on the record.

BUCHANAN, Ch. J., delivered the opinion of the court.

The suit is upon a bond of *Edwin M. Dorsey* to the *State*, with the appellants as his sureties, as a trustee appointed by a decree of *Prince George's* county court, to sell certain real estate, the property of *Walter B. Brooke*, for the payment of a mortgage debt to *Lucy S. Brooke* in the recital mentioned. The condition of which bond, is for the performance by the trustee of the duties required by that decree, or by any future decree, or order in the premises.

All the exceptions taken at the trial below being abandoned by the counsel for the appellants except the first, and (it is enough for us here to say, as we think) properly, there remain but three questions to be considered. The replication to the plea of general performance, assigns as a breach of the condition of the bond, the non-payment by *Edwin M. Dorsey*

of the sum of $932.54½ to the creditors of *Henry M. Chew &*
*Co.* which it is stated he was directed to pay to them, by an
order of the county court of *Prince George's* as a court of
equity, of the 17th of April, 1832, made in the case in which
he was appointed trustee, as by the record of the proceeding
in that case (as is alleged) now remaining in that court will
appear. To this, there is in the rejoinder a plea of *nul tiel*
*record,* on which issue was joined—and to support the issue
on the part of the plaintiff below, certain papers, purporting
to be the original papers and proceedings in equity, in *Prince*
*George's* county court, mentioned in the replication, in which
*Edwin M. Dorsey* was appointed trustee, were produced and
offered in evidence to the court. The admissibility of these
papers was objected to, but being admitted by the court on
inspection, without other proof of their identity, as the origi-
nal papers, stated in the replication to be of record in the
*Prince George's* county court, and without the production of
a record, or transcript of a record of the proceedings; and
the issue that they were produced to sustain, evidence in
favour of the plaintiff below, the bill of exception now under
consideration was taken; which presents two questions :—

1. Whether the production of a record or transcript of a
record of the proceedings, was not necessary to maintain the
issue on the part of the plaintiff below, and the original
papers, without such record or transcript inadmissible for
that purpose?

2. Whether, if the original papers alone were admissible,
and sufficient for that purpose, the papers produced should
not have been proved to be the original papers in the cause
referred to in the replication, otherwise than by inspection by
the court. Which will be considered together. The rule as
laid down in treatises upon evidence is, that when the exis-
tence of a record of a court is put in issue on the plea of
*nul tiel record* in proceedings of the same court, it should be
proved by the production of the record itself, for inspection
by the judges; and that when the record denied by the issue

is of another court, it is to be proved by the production of an exemplification of it.

Before the act of 1817, ch. 117, it was the duty of the clerks and registers of the courts of justice of this state, to record the judgments, &c. of their respective courts, not as in England by engrossing them upon the parchment and delivering them into court, as the permanent rolls of the court, but by transcribing them into books to be kept in their respective offices for that purpose, from the minutes of the court, the docket entries, and the original papers and documents filed in the cause. Which duty was greatly neglected; and exemplifications when required, commonly made out, not of records technically, but from the docket entries, minutes of the court, &c. and it has been the practice of the courts of this *state*, to decide an issue on the plea of *nul tiel record* of the same court, not by inspection of a record actually made up, and produced, but on an inspection of the docket entries, minutes of the court proceedings, original papers, &c. on file in the cause, the judgment or decree in which, is put in issue; treating them as the record of the court—which practice we are not disposed to disturb; not perceiving any sufficient reason why the original proceedings, papers, &c. on file, should not be deemed of as high credit, as a transcript from the record books made out by the clerk from the same materials; nor why the issue on the plea of *nul tiel record*, may not as well be tried and decided on inspection of them by the court, considered and treated as the record, as on an inspection of a record, made out from them in a book by the clerk, who is not supposed more capable to examine, or more critical and exact, in his examination than the judges.

The technical objection, that the existence of a record should be proved by the production of the record itself, as the best and highest evidence being removed, by considering and treating the original proceedings, &c. as the record, and in *Burch and others vs. Scott,* 1 *Gill and John.* 397, it was held by this court, that a decree of the court of chancery is to be considered and taken as enrolled, when it is signed

by the chancellor, and filed by the register, and the term has elapsed during which it was made.

The proceedings and orders referred to in the replication, as of record in the *Prince George's* county court, were had, and made in that court, sitting in equity, and the orders being signed by the court, and filed by the clerk, and pleaded after the lapse of several terms of the court, are in conformity to the decision in *Burch and others vs. Scott,* to be taken and considered as enrolled.

The 7th section of the act of 1817, makes it the duty of the clerks and registers of the courts of justice in the state, to make up at full length in well bound books the records of all the judgments, decrees, proceedings, &c. of their respective courts in cases of the character designated, within twelve months after the time, when such judgments, decrees, and proceedings, shall be rendered, made, or had : not to give validity to such judgments, &c. but for security, and to furnish the ready and convenient means of evidence in other courts ; which as relates to the proceedings in question, which are of the character mentioned in the 7th section of that act, was not done, and as appears by the evidence had not been done, at the time of the trial of this cause below. But they were on the files of the *Prince George's* county court at the time of filing the replication, though afterwards transmitted to the court of chancery, under the act of 1831, ch. 309, authorizing the proceedings in suits in equity, in any of the county courts of the first judicial district, to be transmitted to that court, and taken from thence, and produced to the *Prince George's* county court, on the trial in this cause, of the issue joined on the plea of *nul tiel record.*

It does not appear that they were ever recorded in the chancery court, or that any proceedings were had, or decree made in that court, to require or authorize the recording of them there. They were there, as proceedings had in the *Prince George's* county court, with authority only to the chancellor, given by the act under which they were transmitted, to act upon them as if they had originated in the

court of chancery; with no action of the chancellor upon them as far as appears.   They could not therefore, for any thing appearing, have been properly pleaded as a record of the court of chancery.   And if they had been, the production of them would not have sustained the plea being in fact proceedings in another court.

The clerk having neglected to do his duty, they were the best and only evidence that could have been offered; and when produced to the *Prince George's* county court, that court was authorized and competent, by inspection, to ascertain and determine, whether they were the genuine original papers and proceedings of that court, stated and referred to in the replication.   And having done so, being on the files of that court at the time the replication was put in, (which is not denied,) it did right in considering and treating them as the proceedings and records of that court, for the purposes of the issue before it, notwithstanding they had been transmitted to the court of chancery.

The remaining question arises on the general demurrers to the 2d and 6th rejoinders, both of which are admitted by the counsel for the appellants to be immaterial and bad ; but the demurrers reach back through the whole record, and attach to the first substantial defect in the pleadings, which is found to be in the replication.

*Edwin M. Dorsey* was appointed by the *Prince George's* county court sitting in chancery, a trustee to sell the real estate of *Walter B. Brooke* for the payment of a mortgage debt to *Lucy S. Brooke*, and gave his bond, with condition for the performance of the duties required by that decree, or by any future decree or order in the premises ; and having sold the property, an order was passed by that court, directing the auditor to state an account, between the mortgaged premises and the trustee, distributing the proceeds among the creditors of *Walter B. Brooke* as therein directed.   In pursuance of which order, the auditor stated and reported an account, charging among others, a debt as due to the creditors of *Henry M. Chew & Co.* without naming them or stating the

amount due to either of them, which account so stated, was ratified and confirmed by the court, by an order directing *Edwin M. Dorsey*, " the trustee, to pay over to the creditors of *Henry M. Chew & Co.*" without naming them, the amount so charged in the account as due to them. For the recovery of which the suit was brought: and the breach assigned in the replication is, the non-payment to the creditors of *Henry M. Chew & Co.* without naming them, or any, or either of them, of the amount so charged in the auditor's account, and by the order of the court directed to be paid by the trustee.

The executing the bond by *Dorsey*, the trustee, and his sureties, gave no cause of action; that, could only arise from a breach of the condition for which no person is authorized to put the bond in suit, but one entitled to the fund, or a portion of it. The *state* has no interest in it, and he at whose instance a suit is brought in the name of the *state*, being the real plaintiff, should set out and disclose his name in the pleadings, that his title and right to sue may appear; and an opportunity of meeting and resisting his claim be fairly afforded to the defendant, which is not done in this case. Who are the creditors of *Henry M. Chew & Co.* or to what proportion of the sum charged to be due to them, they are respectively entitled does not appear, either in the auditor's report, the order of the court ratifying and confirming that report, and directing the amount to be paid over to them by the trustee, or in the replication assigning as a breach of the condition of the bond, the non-payment of it; but they are merely styled in each, the creditors of *Henry M. Chew & Co.* who it appears had obtained a judgment against *Walter B. Brooke*.

To whom, claiming as a creditor of *Henry M. Chew & Co.* was the trustee to make payment, and to what amount? The replication does not state. The auditor in his account should have set out the proper names of the creditors of *Henry M. Chew & Co.* interested in the fund in the hands of the trustee, stating the amount to which each was entitled.

And there appearing to be many separate creditors, claiming different amounts, and the judgment mentioned in the account, being entered generally for their use, the replication supposing them to be competent to institute a joint suit on the bond in the name of the *State*, should have done the same thing, showing who were the real plaintiffs, their right to sue, and the amount to which they were respectively entitled; that the defendants, so advised, might frame their defence accordingly, and prepare themselves to show according as the fact might be, that they were not the creditors of *Henry M. Chew & Co.* and not entitled to sue the bond, or that they had been paid pursuant to the order of the court. In an action, not upon the bond, but upon the order of the *Prince George's* county court, for the amount stated in the auditor's account, to be due to the creditors of *Henry M. Chew & Co.* if any action could be sustained on that order, a description of the plaintiffs in the declaration as " the creditors of *Henry M. Chew & Co.*" without setting out their proper names, would clearly be insufficient—and if so, on what principle in an action on the bond, can a like description in the replication assigning breaches, be deemed good. In declarations, replications, and other pleadings, on the part of the plaintiffs, " certainty to a certain intent in general," as it is termed, is required, as well in relation to the parties as the subject matter, that the defendant, in the event of a judgment being rendered against him, may be enabled to plead it in bar of any subsequent action for the same cause—which could not be the case here, for the want of a sufficient description of the plaintiff in the replication. A judgment rendered against the defendants on this replication would be no bar to an action subsequently brought in the name of the *State*, on the same bond for the same cause, at the instance of persons stating themselves to be the creditors of *Henry M. Chew & Co.* and setting out their proper names in the replication; as it would not appear, from a comparison of the two replications, that they and the persons suing in this cause, whose names are not disclosed, were the same, nor

could their rights be affected, by a judgment in favour of unknown persons, styling themselves the creditors of *Henry M. Chew & Co.* without further description, in a suit to which they did not appear to have been parties, and thus the defendants might be made to pay the same sum twice.

We think, therefore, that the court below erred in sustaining the demurrers.

The auditor's account is improperly stated, and in our opinion, the order ratifying and confirming it, was improvidently made.

The judgment must be reversed with costs.

JUDGMENT REVERSED.