## ISRAEL R. PRUDEN *et ux. et al. versus* JUDAH ALDEN.

The minutes entered by the clerk of a court upon its docket, are the record of such court until the full record is made up from the minutes; and if in the mean time the docket be lost, it is to be deemed a loss of the record, and secondary evidence of its contents, is admissible.

Where it appeared, that application was made by an administratrix for a license to sell the real estate of her intestate for the payment of his debts, that she subsequently sold the same, and conveyed it by a deed reciting that such license had been granted by the Court of Common Pleas in August 1807, that the purchaser had continued in the undisturbed possession of the real estate for more than thirty years, that the clerk of such court in 1807 was inattentive to his duty, and that the docket for the August term 1807, was lost, it was *held,* that this evidence was sufficient to prove that a license had, in fact, been granted, although no record thereof was to be found, nor any minute or application remained on the files, from which such a record might be made up.

THIS was a writ of right, in which the demandants claimed title as heirs of their father, Peleg Gulliver, who died seised of the demanded premises, in September 1806.

The trial was before *Morton* J.

The tenant claimed under a deed dated in November 1807, from Salome Gulliver, who was the widow of Peleg, and administratrix of his estate. This deed recited, that "a license was obtained by an order of the Court of Common Pleas, begun and held at Plymouth, on the second Tuesday of August 1807, to make sale of the real estate of said deceased, so far as should be necessary to satisfy the just debts by him owing at the time of his death, and for incidental charges." The tenant contended, that this recital had some tendency to show, that a license was so granted, he having been in the undisturbed possession of the estate under the deed.

The tenant also produced from the probate records, an account settled by the administratrix, a representation of insolvency by her, together with the proceedings of the commissioners.

It was testified by one Delano, that he acted as the agent of the administratrix, in the administration of the estate ; that he applied to the judge of probate for a license to sell the real estate of the intestate for the payment of his debts, and believed that such a license was obtained, as he should not have proceeded to sell without one ; but that he would not undertake to state, positively, that he had seen it ; that he posted up advertisements of such sale signed by himself ; and that on the marriage of the administratrix to one Snow, about three years after the death of her former husband, he delivered all the papers to Snow.

It appeared, that it was the practice of the judge of probate, of the county of Plymouth, from 1807 to 1810, to consult one of the judges of the Court of Common Pleas, at the sittings of that court, in regard to the applications for licenses, and after obtaining his assent thereto, to hand the applications and the directions of the court respecting them, to the clerk at the close of the terms, to be certified ; that the clerk, at that time, had become careless and inattentive to his official duties, and a large portion of the records was made up unskilfully by his wife ; that the docket for the August term 1807 was not to be found ; that the present clerk, having found the papers in his office to be irregularly and confusedly filed, arranged them in or-

der from the year 1800 to the time of his appointment ; that on the files there are seven minutes for licenses for the sale of real estate at the August term 1807, and as many records of licenses granted for that purpose, but that no record is to be found of any license granted to Salome Gulliver for that pur-pose, and no minutes or application on the files, from which such a record might be made up.

The present clerk testified, that a license had been shown to him signed by the former clerk, for April term 1810, no record of which was to be found, nor any application nor minute in relation thereto.

Snow testified that he received some papers from Delano, that he could not tell what they were and he did not remember any license among them, and that one of the demandants had a year since taken them away.

The administratrix testified, that she had very little agency in the execution of the trust to which she had been appointed ; and that she had never received or had knowledge of any license being granted to her for selling the real estate of the intestate.

The demanded premises were sold to the tenant, at the time and place mentioned in the notices posted up by Delano, the sum named in the deed being the highest bid made therefor.

If, upon these facts, the Court should be of opinion, that the jury would be authorized to find, that there was a legal license granted to sell the estate, the demandants were to be-come nonsuit ; otherwise, the tenant was to be defaulted.

*Oct. 25th.*     *Eddy* and *W. Baylies,* for the demandants, cited *Common-wealth* v. *Bolkom,* 3 Pick. 281 ; Matthews on Presumpt. Evid. 209 and cases cited ; *Hudson* v. *Hulbert,* 15 Pick. 423 ; *Knox* v. *Jenks,* 7 Mass. R. 488 ; *Chase* v. *Hathaway,* 14 Mass. R. 222 ; 3 Stark. on Evid. 1235 ; *Sutton* v. *Uxbridge,* 2 Pick. 436 ; *Brunswick* v. *M'Kean,* 4 Greenleaf, 508 ; Co. Lit. 117 *b* ; *Thurston* v. *Slatford,* 1 Salk. 284 ; Com. Dig. *Evidence, A* 4 ; *Hathaway* v. *Clark,* 5 Pick. 490.

*Warren* and *Beal,* for the tenant, cited *Brier* v. *Woodbury,* 1 Pick. 367 ; *Gray* v. *Gardner,* 3 Mass. R. 399.

SHAW C. J. afterward drew up the opinion of the Court It being very clear, that the administratrix could make no valid

sale, without a license, the title of the tenant depends upon proof of such license. It is contended on the part of the demandants, that there is no legal proof of such a license having been granted. We think it may be admitted, as contended for by the demandants, that a license by the Court of Common Pleas must be proved by its records. But the Court are to take notice how the records of their own and of other courts are in fact made and kept. The clerk intrusted with the duty of keeping records, must of necessity take down the doings of the court, in short and brief notes , this he usually does in a minute book called the docket, from which a full, extended and intelligible record is afterwards to be made up. But until they can be made up, these short notes must stand as the record; and if, in the mean time, through the death or sickness of the clerk, or other casualty, they are lost, it must be deemed a loss of the records, and secondary proof may be offered of their contents. *Evans* v. *Thomas*, 2 Strange, 833 ; *Dayrell* v. *Bridge*, 2 Strange, 1264. If a record be lost or consumed by fire, it may be proved by collateral evidence. Com. Dig. *Evidence, A* 3 ; *Thurston* v. *Slatford*, 1 Salk. 284.

In the present case, the license relied upon is supposed to have been granted at the August term, 1807, and is so recited in the deed to the tenant ; and it is proved, that the docket of that term is missing. The recital in the deed, corroborated by many other circumstances, together with more than thirty years' undisturbed possession by the tenant under a deed which could only be good by force of such license, appears to the Court to be sufficient proof of the existence and loss of the record, to let in secondary evidence.

And from the evidence thus offered, the Court are satisfied, that such license was in fact granted, and some minute of it entered by the clerk, which would have been sufficient to warrant him in making up an extended record, according to the usual course of business in his office.

Under the agreement of the parties, the Court are of opinion, that the jury would have been authorized to find that there was a legal license to the administratrix to sell the estate, and that the tenant took a good title under it. [See *Whitney* v. *Sprague, post,* 198.]

*Demandants nonsuit*