THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES KRUEGER, Plaintiff in Error.

*Opinion filed December 15, 1908.*

1. CRIMINAL LAW—*Lottery Policy act construed.* The provision of section 2 of the Lottery Policy act, (Laws of 1905, p. 192,) authorizing the conviction and punishment of anyone who shall have in his possession, knowingly, any writing, paper or document representing or being the record of any chance, share or interest in numbers "sold, drawn or to be drawn," covers not only such papers and documents as represent a chance, share or interest in numbers "sold," but also in numbers "drawn or to be drawn," and it is not necessary to allege and prove that they were sold.

2. SAME—*what objections go merely to form of information.* Objections that an information based on section 2 of the Lottery Policy act used the word "have" in the place of "had" and the word "knowly" for "knowingly," should be raised, if at all, by a motion to quash, as they go to the form of the information only, and not to the merits of the offense.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Municipal Court of Chicago; the Hon. E. K. WALKER, Judge, presiding.

EDWARD H. MORRIS, for plaintiff in error.

W. H. STEAD, Attorney General, and JOHN J. HEALY, State's Attorney, (J. KENT GREENE, and F. L. BARNETT, of counsel,) for the People.

Per CURIAM: This is an information brought in the municipal court of the city of Chicago, charging plaintiff in error with "unlawfully and knowly" having "in his possession, for the purpose of gaming, a certain writing and paper and document representing and being a record of a chance, share and interest in numbers drawn and to be drawn, and which papers, writing and documents aforesaid is commonly called 'policy,' and in the nature of a bet, wager and insurance upon the drawing and drawn numbers of a public and private lottery," in violation of certain designated sections of the statutes. This information was based particularly on that portion of section 2 of the Lottery Policy act (Hurd's Stat. 1905, p. 709,) which states that a person shall be guilty of the offense if he "shall have in his possession, knowingly, any writing, paper or document, representing or being a record of any chance, share or interest in numbers sold, drawn or to be drawn, or in what is commonly called 'policy,' or in the nature of a bet, wager or insurance, upon the drawing or drawn numbers of any public or private lottery," etc. On a trial in the municipal court a verdict of guilty was rendered, and a judgment entered that plaintiff in error pay a fine of $500 and costs and be confined in the house of correction for three months. Writ of error was sued out to the Appellate Court, where the judgment was affirmed, and the case is brought here by writ of error for further review.

Plaintiff in error contends that the municipal court was without constitutional authority and jurisdiction to try him on information. This question has been decided adversely to plaintiff in error's contention in *People* v. *Glowacki,* 236 Ill. 612. Furthermore, this constitutional question was first raised by petition for rehearing in the Appellate Court, and hence was waived. *In re McWhirter,* 235 Ill. 607.

It is also contended that the information does not allege that plaintiff in error had in his possession the kind

of writing prohibited by the statute in question, the argument being, as we understand it, that the writing, paper or document must represent a record of a chance, share or interest of tickets "sold," and that there is no proof in this record that any lottery tickets or numbers were sold.

It appears from this record that "policy" is played by a person going to the writer of "policy" and selecting several numbers, usually three but sometimes two, four or more, that he wants to play, and putting up the required amount of money that he is to pay for the right to select or guess or wager on those numbers. Three copies of these numbers and amount paid are then recorded on slips of paper by means of carbon paper. The player gets one copy, the policy writer keeps one and the third is sent to the main office that employs the policy writer. There are different forms of playing policy. Usually there are seventy-eight different numbers to choose from, but in some games there are eighty numbers. In case seventy-eight numbers are selected from, these seventy-eight are supposed to be put in a wheel and mixed up and then twelve of them drawn and recorded on a slip of paper, copies of which are given to the persons who have wagered on that special drawing of numbers. If the person who has made a wager finds among these twelve numbers drawn the three numbers he selected, as shown by his slip, he wins. If all three numbers are not among the numbers so drawn he loses. If there are more than seventy-eight numbers used, or if the player bets on more or less than three, as he may in the different kinds of "policy," the drawings are in a similar way. It appears from this record that the numbers are sometimes drawn otherwise than by wheel, but always by chance. The evidence shows that certain police officers in plain clothes went to defendant's place in the city of Chicago about noon, on July 24, 1907, and found there six persons, the plaintiff in error not then being present; that shortly after one o'clock

he came in and said he was a little late but it was all right, and he drew out certain envelopes having certain names written thereon, and distributed them to the persons other than the officers, and when these persons started to leave the officers arrested them, finding in their possession these envelopes. Each envelope had in it slips of paper and some of them also contained money. One was marked with the name of plaintiff in error, having in it both slips of paper and money. Each of the slips had numerous numbers on it. One of the officers testified that he knew how the game of policy was played and gave a detailed explanation of it. He testified that the slips given out by plaintiff in error in the envelopes to the other persons in the room were records of drawings, and it appears from his evidence the record of the drawing is a necessary part of the game.

The language of the statute is, that one is guilty who "shall have in his possession, knowingly, any writing, paper or document, representing or being a record of any chance, share or interest in numbers sold, drawn or to be drawn." Counsel insists that the writing, paper or document must represent numbers "sold." Manifestly, the language not only refers to numbers "sold," but also to documents that contain a record of numbers "drawn or to be drawn." It is true that the witnesses testified that these papers or documents taken from plaintiff in error were not tickets; that they purported to be drawings only; that nothing was paid for these records of drawings. It is argued that the legislature did not by that portion of the statute intend to cover any documents or papers unless they represented something "sold." The case of *France* v. *United States,* 164 U. S. 676, cited by plaintiff in error, had under consideration a statute worded very differently from the one here in question, and the court held that the statute was not so drawn as to cover a charge of the nature under discussion in this case. Counsel for plaintiff in error does not contend that having in possession, knowingly, papers of this kind might

not be made a criminal offense. Indeed, he argues that the latter part of the section of the Policy act quoted from above does have language in it that would cover an offense such as is here proven. By the part of this section upon which the information was particularly based we think the legislature not only intended to cover documents and papers that represented a chance, interest or share in numbers "sold," but also a chance, interest or share in numbers "drawn or to be drawn." From the evidence in this record the plaintiff in error knowingly had in his possession papers containing a record of a chance, share or interest in numbers "drawn" in a game commonly called "policy," in the nature of a bet. Therefore the allegation and the proof correspond and the verdict was justified.

The instruction that plaintiff in error contends was erroneously refused by the trial court was based upon the construction that he contended for. Our ruling that that construction of the statute is not the proper one effectually disposes of his argument that the instruction should have been given.

The further contention is made that the information has the word "have" instead of the word "had" and the word "knowly" instead of "knowingly." These objections go merely to the form and not to the real merits of the offense charged. They should have been raised, if at all, on a motion to quash. Crim. Code, div. 11, sec. 9; Hurd's Stat. 1905, p. 743; *Curtis* v. *People,* Breese, 256; *Townsend* v. *People,* 3 Scam. 326; *Gitchell* v. *People,* 146 Ill. 175.

We do not think the trial court committed reversible error in the admission of evidence.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*