WILLIAM D. STEIN *et al.* Defendants in Error, *vs.* ISAAC
MEYERS, Plaintiff in Error.

*Opinion filed December 21, 1911—Rehearing denied Feb. 15, 1912.*

1. APPEALS AND ERRORS—*the Supreme Court has jurisdiction if
constitution of constitution is involved.* Under section 118 of the
Practice act appeals from and writs of error to city courts must
be taken directly to the Supreme Court where the construction of
a constitutional provision is involved.

2. SAME—*how construction of provision of constitution arises.*
The construction of a constitutional provision usually arises out
of comparison of such provision with a statute claimed to be in
conflict therewith; but if the provision is self-executing the ques-
tion of its construction generally arises when it is sought to ap-
ply the provision to a given state of facts.

3. SAME—*when construction of provision of constitution is in-
volved.* Whether a given collection of abbreviations and letters
entered by the clerk of the municipal court upon the record as a
judgment of the court amounts to a judgment in the English lan-
guage, as required by section 18 of the schedule of the constitution,
is a question which involves a construction of such provision.

4. CONSTITUTIONAL LAW—*section 62 of Municipal Court act is
not in violation of section 18 of schedule of constitution.* Sec-
tion 62 of the Municipal Court act, which authorizes the chief
justice of that court to prescribe abbreviated forms of entries of
orders, is not of itself in violation of section 18 of the schedule
of the constitution, requiring all judicial proceedings to be con-
ducted and preserved in the English language, as such section 62
only authorizes the use of abbreviated *forms* and does not au-
thorize the use of any other than the English language nor of un-
intelligible abbreviations.

5. SAME—*section 18 of schedule of the constitution construed.*
Section 18 of the schedule of the constitution, providing that all
judicial proceedings must be conducted and preserved in the Eng-
lish language, requires that the letters be formed into words which
are known as a part of that language, and that those words be
so used in connection with one another that they form sentences
which convey some thought or meaning.

6. SAME—*the constitution does not prohibit use of all abbrevi-
ations.* There are some abbreviations of words which have be-
come so well known and are so commonly used that they may be
said to constitute a part of the English language within the mean-
ing of section 18 of the schedule of the constitution.

7. SAME—*when entry of alleged judgment violates section 18 of schedule of the constitution.* An alleged judgment entered as "Fndg deft G withh prem descr in complt; judg on fndg & c," cannot be said to be in the English language, within the meaning of section 18 of the schedule of the constitution.

8. COURTS—*rule as to the entry of judgment nunc pro tunc.* A court has no right to enter a judgment *nunc pro tunc* at a subsequent term unless the judgment was in fact rendered at a previous term and was not entered of record through some fault, neglect or oversight; and in such case the fact that the court did give judgment at the previous term can only be proved by some memorial paper or minute in the case made at such former term.

9. SAME—*when judgment cannot be entered.* Judgments and records of courts cannot rest in parol or upon the recollection of the judge or any other person, and if there is no minute or memorial paper in the records of the court to show that judgment was, in fact, pronounced, no judgment can be entered.

10. SAME—*when entry of a judgment nunc pro tunc cannot be upheld.* A recital in an order of the municipal court of Chicago for the entry of a judgment *nunc pro tunc,* to the effect that the abbreviations and letters relied upon as the minute or memorial showing the judgment had been prescribed by the chief justice of that court as a sufficient abbreviated form for the judgment, can not be regarded by the Supreme Court as authorizing the entry of the judgment *nunc pro tunc,* where the entry relied upon is unintelligible in itself and the order of the chief justice prescribing the form is not introduced in evidence and preserved in the record by a bill of exceptions.

HAND, J., specially concurring; CARTER, C. J., dissenting.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. MICHAEL F. GIRTEN, Judge, presiding.

LOUIS GREENBERG, for plaintiff in error.

STEIN, MAYER & STEIN, (PHILIP STEIN, of counsel,) for defendants in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

Defendants in error brought an action of forcible detainer in the municipal court of Chicago against plaintiff in error to recover possession of certain premises in the city

of Chicago. Plaintiff in error failing to appear was defaulted, and the clerk, on February 28, 1910, entered upon the records of the court in said cause the following words, letters and characters: "Fndg deft G withh prem descr in complt; judg on fndg & c." Thereafter, on June 13, 1910, defendants in error, in accordance with notice duly served upon plaintiff in error, applied to the court for leave to amend the record of the cause, and the court thereupon, over the objection of plaintiff in error and without hearing any evidence, entered an order in which it is recited that on February 28, 1910, an order was entered in this cause in abbreviated form, in the words, letters and characters above quoted, and that said entry was in accordance with the order of the chief justice of the municipal court prescribing said entry as an appropriate and sufficient abbreviated form for the finding and judgment hereinafter quoted; that said finding and judgment order were not entered otherwise by the clerk than in said prescribed abbreviated form, and that said finding and judgment entered is the abbreviated form of the finding and judgment as pronounced and rendered by the court February 28, 1910; that said abbreviated form of finding and judgment was entered by the clerk upon the order of the court, and that the court at the same time, after hearing the evidence in the cause, made an entry of said order upon his own minutes, as follows: "February 28th, 1910, D. J. P.," which minutes represent the judgment as entered by the clerk, but that for greater security it is now deemed advisable to amend said finding and judgment order that the same may be spread upon the record fully, in accordance with the amplified form of such finding and judgment. After setting forth the above recitals the order continues as follows:

"Wherefore, the court being fully advised in the premises and having examined the order as entered by the said clerk of this court and his own minutes as made by the court at the time the said judgment was entered, on motion

of the plaintiffs, it is therefore ordered by the court that said finding and judgment order of February 28, 1910, be and the same are hereby amended *nunc pro tunc* as of February 28, 1910, so that the same shall read as follows, to-wit: 'And the court having heard the evidence and being fully advised in the premises finds the defendant guilty of unlawfully withholding from the plaintiffs the possession of the premises described in the plaintiffs' complaint herein, and that the right to the possession of said premises is in the plaintiffs. And the plaintiffs now here move the court for final judgment herein. It is therefore considered by the court that the plaintiffs have judgment herein, and that the plaintiffs have and recover of and from the defendant possession of the premises described in the complaint herein, and that a writ of restitution issue therefor. It is further considered by the court that the plaintiffs have and recover of and from defendant the costs and charges by the plaintiffs herein expended, and that execution issue therefor. It is further ordered by the court that said finding and judgment order be entered and spread of record upon the records of this court as of February 28, 1910."

A writ of restitution was thereafter issued, and was on July 13, 1910, returned by the bailiff of the court as executed. Plaintiff in error has brought the cause to this court by writ of error, and for grounds of reversal urges that section 62 of the Municipal Court act, which authorizes the chief justice to prescribe abbreviated forms of orders, is unconstitutional; that the entry of the judgment order by the clerk in manner above quoted is in conflict with section 18 of the schedule of the constitution and void, and that the court erred in granting the motion to amend the record for the entry of a judgment *nunc pro tunc*. Defendants in error contend that the abbreviations entered as a judgment order constitute a valid judgment, and that if they do not, the *nunc pro tunc* order of June 13, 1910, was properly entered.

Plaintiff in error relies chiefly upon his contention that section 62 of the Municipal Court act is void as being in conflict with section 18 of the schedule of the constitution. That part of section 62 involved is as follows: "That it shall be the duty of the chief justice of the municipal court to superintend the keeping of the records of the said court and to prescribe abbreviated forms of entries of orders therein, which abbreviated forms so prescribed shall have the same force and effect as if the said orders were entered in full in the records of said court." Section 18 of the schedule of the constitution is as follows: "All laws of the State of Illinois, and all official writings, and the executive, legislative and judicial proceedings, shall be conducted, preserved and published in no other than the English language." It is plain that section 62 does not conflict with section 18 of the schedule of the constitution, as it does not authorize the chief justice of the municipal court to prescribe the forms of orders in any other than the English language. This section authorizes only the use of abbreviated *forms*. It does not authorize the use of any other than the English language or the use of forms containing abbreviations of words which render them unintelligible. There can be no objection to the use of abbreviated forms, and such forms may be as short as desired so long as they aptly express the orders of the court. There is nothing in section 62 that is in anywise in conflict with this section of the constitution.

A motion was interposed by defendants in error to dismiss this writ of error for want of jurisdiction, upon the ground that no constitutional question is involved. A determination of this motion was reserved until the hearing of the cause. This motion must be denied. Section 118 of the Practice act provides: "Appeals from and writs of error to * * * city courts * * * in all * * * cases in which a franchise or freehold or the validity of a statute or a construction of the constitution is involved,

\* \* \* shall be taken directly to the Supreme Court." Here a construction of section 18 of the schedule of the constitution is involved. As we said in *County of Cook* v. *Industrial School for Girls,* 125 Ill. 540, on page 567: "The question of the construction of a constitutional provision usually arises out of a comparison of such provision with the terms of a statute supposed to be in conflict with it. But there are constitutional provisions which are self-executing and require no legislation to make them effectual. \* \* \* It is clear that a question of the construction of such a self-executing clause will generally arise when it is applied to a given state of facts. If the meaning of the prohibition contained in such a clause is perfectly plain there is nothing to construe, but if there is a doubt as to the meaning of any word or phrase when applied to the proven facts then a case for construction has arisen." Said section 18 of the schedule is self-executing, and provides that all judicial proceedings shall be conducted and preserved in no other than the English language.

At first blush it would appear that there should be no occasion for a discussion as to the meaning of the words "English language." They refer to the well known spoken and written tongue used by the people of this nation. Webster's New International Dictionary defines language to be: "The body of words and methods of combining words used and understood by a considerable community." The English language is composed of words spoken or written. While these words are composed of single letters of the alphabet, the letters themselves do not constitute the English language. In fact, those letters are derived from a language more ancient than the English, and it is only by using them in connection with the spelling of English words that they can be said to be of themselves, in any sense, a part of the English language. To constitute English language the written letters used must be formed into words that are known as a part of the language, and those words

so used in such connection with one another that they form sentences which convey some thought or meaning. There are, no doubt, some abbreviations of words which have become so well known and are so commonly used that they could be said to constitute a part of the English language. But such an entry as "Fndg deft G withh prem descr in complt; judg on fndg & c." cannot be said to have been made in the English language. It is simply a jumble of words and letters and conveys no meaning whatever to an English-speaking person. The entry of this so-called order or judgment is in conflict with section 18 of the schedule of the constitution and is therefore of no effect.

We come now to a consideration of the question whether the court properly entered the *nunc pro tunc* order of June 13. A court has no right to enter a judgment *nunc pro tunc* at a subsequent term unless the judgment was, in fact, rendered at a previous term and was not entered of record through some fault, neglect or oversight. In such case, the fact that the court did give judgment at the previous term can only be proved by some memorial paper or minute in the case made at such former term. The judgments and records of courts cannot rest in parol or upon so uncertain a foundation as a personal recollection of the judge or any other person, and the fact that a judgment is rendered at a former term cannot be determined from the memory of witnesses or the personal recollection of the judge himself. Where there is no minute or memorial paper in the records of the court to show that judgment was, in fact, pronounced, it cannot be so entered. (*Coughran* v. *Gutcheus,* 18 Ill. 390; *Ayer* v. *City of Chicago,* 149 id. 262; *Chicago, Milwaukee and St. Paul Railway Co.* v. *Walsh,* 150 id. 607; *Tynan* v. *Weinhard,* 153 id. 598; *Chicago, Burlington and Quincy Railroad Co.* v. *Wingler,* 165 id. 634.) The order for the entry at the subsequent term recited that the entry by the clerk, as above quoted, was in

accordance with the order of the chief justice of the municipal court prescribing that entry as an appropriate and sufficient abbreviated form for the judgment which the court had directed to be entered. No evidence was heard by the court and no proof made to support the order. We have no means of knowing what was contained in the order of the chief justice referred to. That the characters entered by the clerk were in accordance with an order of the chief justice of the municipal court, and by virtue of such order represented the *nunc pro tunc* judgment entered, is merely the conclusion of the trial judge. If such an order by the chief justice existed, it should have been introduced in evidence and incorporated in the bill of exceptions in this case. It may be possible that the entry of the clerk at the time of the default could be shown to be such a memorial paper as to warrant the entry of such a judgment as is contained in the *nunc pro tunc* order of June 13, but from the facts appearing in this record it does not warrant the entry of such *nunc pro tunc* judgment. Nor can it be said that the situation is aided in the least by the recital in the order that the entry of the judgment *nunc pro tunc* was based also upon the minutes of the trial judge, which were as follows: "February 28th, 1910, D. J. P." While the letters "D. J. P." may have a well known meaning to the trial judge, or may, in fact, be designated in the order of the chief justice of the municipal court referred to as possessing a particular meaning when used in this manner, there is nothing in this record which discloses that they had any particular meaning or that it was the minute customarily made by the trial judge in such cases. So far as it appears from this record, the court was without power or authority to enter the judgment *nunc pro tunc* as of February 28, 1910.

The order of the municipal court of June 13, 1910, amending the record, is reversed and the cause is remanded

to that court, with leave to defendants in error to renew their motion for the entry of a proper judgment.

*Reversed and remanded.*

Mr. JUSTICE HAND, specially concurring:

I am of the opinion that there is no constitutional question raised on this record and that this court is without jurisdiction to hear and determine this case and that it should be transferred to the Appellate Court, as the only question presented for decision is the construction to be placed upon section 62 of the Municipal Court act, and the construction of a statute does not involve a constitutional question. Upon the oral argument it was conceded by counsel that the only authority for using the form in which the judgment appealed from was entered, was section 62 of the Municipal Court act and the action of the chief justice of the municipal court based thereon. That section provides that it shall be the duty of the chief justice of the municipal court to prescribe abbreviated forms in which the judgments of that court may be entered. The question, therefore, to be decided is, was the chief justice of the municipal court authorized by that section of the statute to prescribe the form in which this judgment was entered? He was authorized to prescribe abbreviated forms, and not to prescribe abbreviations in which judgments might be entered. The object of the legislature doubtless was to eliminate from the records of the municipal court the long forms in which judgments have heretofore been entered in courts of record in this State, which was commendable, and had the forms prescribed by the chief justice of the municipal court been abbreviated there could have been no objection, constitutional or otherwise, to their use, provided they were intelligible. The form used in this case was not an abbreviated one but an unintelligible jumble of abbreviations, and does not comply with the statute. As a majority of

the court are in favor of retaining jurisdiction, I agree with the view that the judgment entered is not valid.

Mr. Chief Justice Carter, dissenting:

I cannot concur in the conclusion reached in the foregoing opinion, and particularly in some of its statements. The questions are so important that it appears advisable to set out my views at some length. While the opinion admits that certain abbreviations of words may be used, it holds, in effect, that none of the abbreviations found in the docket entry here involved are in the English language. With this holding I cannot agree.

The provision of section 18 of the schedule of the constitution was not intended to regulate the extent to which judicial proceedings should be published or preserved. That question, in my judgment, is under the control of the General Assembly, and if that body has not acted, then it is subject to control by rules of court. It may be conceded that this provision of the constitution requires that English, and no foreign language, shall be used in preserving and publishing judicial proceedings. The form of spelling words in the English language is not within the prohibition of said section 18. A writing intended to express the English language, even though every word might be misspelled, would nevertheless not be in contravention of the constitution if a person familiar with our language could understand what was meant.

The propriety and constitutionality of the use of abbreviations in judicial proceedings in this State have always been upheld, both in the formal entry of judgments and the admission of documents in evidence. The use of abbreviations in judicial proceedings for the sale of real estate for taxes has been permitted by statute for two-thirds of a century. (Rev. Stat. 1845, p. 446; Hurd's Stat. 1909, chap. 120, sec. 184, p. 1857.) In such proceedings the abbreviations "pt." for "part," "fro" for

"from" and "ft." for "feet" have been held legal; (*Blake-ley* v. *Bestor,* 13 Ill. 708;) also "c," "ct." or "cts." for "cents," "m" for "mills," "tx" for "tax," "vl." for "valuation" and "$" for "dollars;" (*Jackson* v. *Cummings,* 15 Ill. 449;) "N. E. ¼" for "north-east quarter;" (*Bowen* v. *Prout,* 52 Ill. 354; *Kile* v. *Town of Yellowhead,* 80 id. 208; *Law* v. *People,* 80 id. 268; *Paris* v. *Lewis,* 85 id. 597;) also "W. side" was held to mean the west side of a piece of land; (*Taylor* v. *Wright,* 121 Ill. 455;) also "sec. 23, 38, 14" as meaning "section 23, township 38, range 14;" (*McChesney* v. *City of Chicago,* 173 Ill. 75;) so also "pt. S. E. ¼ S. of T. P. & W. R. R." has been held to mean all that part of the south-east quarter of section 33 lying south of the Toledo, Peoria and Western railroad, the court saying that "the abbreviations, letters, figures and characters used in describing the lands are well understood and do not vitiate the descriptions." *Sholl Bros.* v. *People,* 194 Ill. 24.

Clerks of courts in this State have been required for many years to keep fee books, in which are to be "distinctly set down, in items," the cost of each suit. (Hurd's Stat. 1909, chap. 25, sec. 16, p. 514.) Under this statute this court sustained a fee bill, and took judicial notice of such abbreviations used therein as "app.," "atty.," "fil.," "doc.," "ret.," "sat.," "find.," "T. fee 50," "M. and Ec.,"—stating "the abbreviations therein appearing would be understood by the court, before whom, without a jury, the cause was tried." *Myers* v. *Shoneman,* 90 Ill. 80.

This court has also taken judicial notice of abbreviations used in written instruments offered in evidence. Thus, in *Belford* v. *Beatty,* 145 Ill. 414, it was held that "int. a 6% p. a.," in a promissory note, meant "interest at six per cent per annum;" that this must be so understood in the connection in which the abbreviations were used. In *Knapp Electrical Works* v. *Wire Co.* 157 Ill. 456, as also in *Consolidated Coal Co.* v. *Schneider,* 163 id. 393, it was

253—14

held that the initials "f. o. b." could be admitted and parol evidence heard to explain their meaning. In *State* v. *Intoxicating Liquors,* 73 Me. 278, judicial notice was taken of the meaning of "C. O. D." To the same effect is *United States Express Co.* v. *Keefer,* 59 Ind. 263. Judicial notice, likewise, has been taken of numerous other abbreviations, such as "acct.," "admr." and "supt." (*Heaton* v. *Ainley,* 108 Iowa, 112; *Moseley's Admr.* v. *Mastin,* 37 Ala. 216; *Southern Missouri Land Co.* v. *Jeffries,* 40 Mo. App. 360.) The letters "J. P." have been recognized as an abbreviation for "justice of the peace." (*Shattuck* v. *People,* 4 Scam. 477.) "N. P." are characters in common use, meaning "notary public." (*Rowley* v. *Berrian,* 12 Ill. 198.) In *Bowen* v. *Wilcox & Gibbs Co.* 86 Ill. 11, this court took judicial notice of the abbreviation "ads," holding that it meant "ad sectam" or "at the suit of," just as "v." indicated "versus" or "against." The meaning of customary abbreviations and diminutives of christian names, of other abbreviations in common use, of initials commonly employed in the community, and of initials and abbreviations of printers and surveyors, will be within the knowledge of judges and jurors. (16 Cyc. 875.) See for a long list of abbreviations of which courts have taken judicial notice, 1 Ency. of L. & P. 82, and cases cited.

An English statute provided that attorneys might write out their bill for fees and charges with such abbreviations as were then commonly used in the English language. Bills containing the following abbreviations were said to be in conformity with that law: "Drawg. declon, ffo. 15;" "Attg. you in long confce.;" "Sergt.;" "Atty.;" "Lres," etc. The court held that these abbreviations were common and intelligible to every professional man. (*Frowd* v. *Stillard,* 4 C. & P. 51; *Reynolds* v. *Caswell,* 4 Taunt. 192.) This court held in *Holbrook* v. *Nichol,* 36 Ill. 161, that "L. S." meant "seal." In *Metzger* v. *Morley,* 197 Ill. 208, "b. of e." was held, in the connection in which used, as

meaning "bill of exceptions." In Blackstone's time a death sentence was indicated on the record by the abbreviation *"sus. per col.,"* as representing *suspendatur per collum.* This court has repeatedly stated that evidence could be heard to explain descriptive terms used in an ordinance in order to show that they had a well known and generally accepted meaning in the locality. *McChesney* v. *City of Chicago,* 226 Ill. 238; *Kuester* v. *City of Chicago,* 187 id. 21.

In the eleventh edition of the Encyclopedia Britannica, in the article on abbreviations, that word is defined as, "strictly, a shortening; more particularly an abbreviation is a letter or group of letters taken from a word or words and employed to represent them for the sake of brevity; abbreviations, both of single words and of phrases, having a meaning more or less fixed and recognized, are common in ancient writings and inscriptions, and very many are in use at the present time." The courts will take notice of whatever ought to be generally known within the limits of their jurisdiction. (1 Greenleaf on Evidence,—15th ed.— sec. 6; *Kile* v. *Town of Yellowhead, supra.*) We must take judicial notice as judges of what we know as men. *Ritchie & Co.* v. *Wayman,* 244 Ill. 509; *Munn* v. *Burch,* 25 id. 21.

Our authority to use letters and abbreviations to express language and writings comes not from the law, but solely from customary usage. If, then, a custom or usage is known, even locally, under the authorities, as we have seen, it is proper to prove it. The abbreviations of "Jno.," "Jas.," "Robt.," "Hon.," "Rev.," "Mr." and "Esq." are understood by everyone familiar with our language. A student of grammar would know, without explanation, that "nom." means "nominative;" "dat." means "dative;" "perf." means "perfect;" "adj." and "adv." "adjective" and "adverb," respectively. Abbreviations are often used in Biblical references and very widely understood. For in-

stance, "1 Cor. 1, 1," means the first verse of the first chapter of the First Epistle of St. Paul to the Corinthians; "Matt." stands for that part of the Bible more accurately known as the Gospel According to St. Matthew, and "Deut." means the Book of Deuteronomy.

The fact that in order to understand the meaning of a particular abbreviation it is necessary to take into consideration the context is no reason for asserting that such abbreviation is not a legitimate expression of an English word or phrase. One of the fundamental rules of law in construing contracts or wills is that the meaning of the words should be found from the context. Thus, it has frequently been held that the word "heirs" should be construed from the context to mean "children," the word "children" to mean "heirs," or that those words and "issue" were used interchangeably. (*Stisser* v. *Stisser,* 235 Ill. 207; *Dick* v. *Ricker,* 222 id. 413; *Strawbridge* v. *Strawbridge,* 220 id. 61; *Butler* v. *Huestis,* 68 id. 594.) This court held in *Nichols* v. *Mitchell,* 70 Ill. 258, that it was evident from the context of a judicial record that the words "3d of March" was a clerical error, meaning "3d day of April." In *Winslow* v. *Cooper,* 104 Ill. 235, this court held that "north side S. W. ¼ of block 2," in a tax receipt, meant, in the connection in which used, the north half of the southwest quarter of that block. In *Lewis* v. *Few,* 5 Johns. 1, it was held that, in connection with the context, "undertood" was "understood;" that the obvious sense, and the meaning of the sentence in which it was used, required it. In the same case the court held that "U. States" manifestly meant, as employed in an article claimed to be libelous, "United States." In *People* v. *Krueger,* 237 Ill. 357, this court held that the spelling of the word "knowingly" in an information as "knowly" was not reversible error. The abbreviation "Dr.," by itself, alone, might mean either "doctor" or "debtor," but "Dr. John Smith" would mean

"Doctor John Smith," while "John Smith, Dr.," found in an account, would mean "John Smith, debtor."

By reason and authority the use of abbreviations in judicial proceedings is not prohibited. The question is, then, as to what extent they may be lawfully used and what particular abbreviations are or are not proper. The line is not drawn between words written out in full and all abbreviations, but it must be drawn between those abbreviations which are intelligible and those which are unintelligible. Manifestly, the sound legal rule is, that it is permissible, in judicial proceedings, to use any abbreviations which would be understood by an intelligent person who would understand the record if such words were not abbreviated. This court should not hold that abbreviations, the meaning of which are understood by judges, attorneys, officers of the court and those familiar with judicial proceedings, will be illegal because someone entirely unfamiliar with these things could not understand them. Many people, even though they can read the English language, would be entirely unable to ascertain the meaning of the records when written out in full. A system of keeping records intelligible to everybody is an impossibility. In determining what abbreviations may be used, those persons, only, should be considered who can understand the words which the abbreviations represent. This rule is followed by writers of grammars, dictionaries and other books of that character. As we have seen, the legislature provided, years ago, that in entering up a judgment for taxes abbreviations could be used, and this court has repeatedly upheld that statute. The legislature also has provided that a warranty deed would be good which contained the words "conveys and warrants," and that these words should have the meaning formerly expressed by nearly a hundred words. If the contention of plaintiff in error be correct, does it not follow that taking down the testimony of a witness in shorthand, the witness having testified in English, is not preserv-

ing it in the English language? Because we spell words phonetically,—that is, if we should spell "through" as "thru,"—does that make the writing any the less the English language?

The constitutional provision with reference to the English language applies to all proceedings in court, including depositions, affidavits, pleadings, and all other papers. If it excludes all abbreviations, the use in the bill of exceptions of "Q" to represent "Question" or "A" to represent "Answer," or in the pleadings "Plff." representing "plaintiff," "Deft." representing "defendant" and "Atty." representing "attorney," would be unlawful. So it would prevent the defendant concluding his plea, "and of this he puts himself upon the country, etc.," because those who are not familiar with court proceedings would not understand what is meant by the "etc." There are but few decisions of this court that do not contain, both in the printed report and the copy filed with the clerk, a large number of abbreviations used in citing authorities and references to statutes. Such abbreviations are likewise found in the reports of all the other States and England. It has never been suggested that because of these abbreviations these opinions were not in the English language.

Power to prescribe rules and practice is not exclusively a legislative one,—the legislature may confer it upon the courts. In *Wayman* v. *Southard,* 10 Wheat. 1, Chief Justice Marshall said (p. 42) : "It will not be contended that Congress can delegate to the courts, or to any other tribunals, powers which are strictly and exclusively legislative, but Congress may certainly delegate to others, powers which the legislature may rightfully exercise itself. * * * The line has not been exactly drawn which separates those important subjects, which must be entirely regulated by the legislature itself, from those of less interest, in which a general provision may be made and the power given to those who are to act under such general provisions to fill

up the details, * * * but the maker of the law may commit something to the discretion of the other departments." In *Coleman* v. *Newby,* 7 Kan. 82, it was stated that the legislature may enact general provisions authorizing the courts who are to act thereunder to fill up the details. It may mark the outlines and leave those who are to act within those outlines to use their discretion in carrying out the minor regulations. See to the same effect, *Hopkins* v. *Levandowski,* 250 Ill. 372.

Congress has always granted to the Federal courts large power as to making their rules of practice, forms and modes of proceeding. Every court of record has inherent power, irrespective of statute, to make rules, not in conflict with statutory or constitutional regulations, for the transaction and regulation of its business. (8 Am. & Eng. Ency. of Law, 29, and cases cited.) It would be practically impossible for the legislature "to regulate the details and minutiæ of the practice in our courts." (*Hinckley* v. *Dean,* 104 Ill. 630.) In this case it was also held that the provision of section 29 of article 6 of the constitution, as to proceedings and practice of all courts of the same class or grade being uniform, refers "alone to legislation and not mere rules of court regulating practice." The power possessed by the courts to make rules regulating practice has been repeatedly upheld in this State. *Scammon* v. *McKey,* 21 Ill. 554; *Holloway* v. *Freeman,* 22 id. 197; *Howe* v. *Thayer,* 24 id. 246; *Hayward* v. *Ramsey,* 74 id. 372; *Rozier* v. *Williams,* 92 id. 187; *Gage* v. *Eddy,* 167 id. 102; *Dahnke* v. *People,* 168 id. 102; *In re Day,* 181 id. 73; 8 Am. & Eng. Ency. of Law, (2d ed.) 28.

The keeping of the records of a court is a matter of practice. In *Fleischman* v. *Walker,* 91 Ill. 318, the court said: "The mode and order of procedure in obtaining compensation for an injury by action or suit in the legally established courts, from the inception of such suit until it ends in a final determination of the court of last resort, is

all comprehended in the term 'practice.' The relative jurisdictions of the several courts; the modes by which and the extent to which controversies may be transferred, for trial or for review, from one tribunal to another, and, where several transfers are allowed, the order of sequence in such transfers, are all included in what is called the practice of the courts. The word 'practice' is so understood and treated by the text writers, and it is defined by Bouvier to be the 'form, manner and order of conducting and carrying on suits or prosecutions in the courts through their various stages, according to the principles of law and the rules laid down by the respective courts.' "

The amendment to the constitution under which the municipal court was established provided that "the jurisdiction and practice of said municipal courts shall be such as the General Assembly shall prescribe." In discussing whether oral instructions could be given in the municipal court, this court held, in *Morton v. Pusey,* 237 Ill. 26, that this constitutional provision would be meaningless if so construed as to hold that the practice as to giving instructions in the municipal court must be the same as in other courts; that as the question of oral or written instructions was solely a matter of practice, section 34 of the Municipal Court act, permitting either method, was constitutional; that "one purpose of the legislature and of the people unquestionably was to authorize the creation of a code of practice for the municipal court of Chicago which might apply to that court alone."

In *Lassers v. North-German Steamship Co.* 244 Ill. 570, in discussing a question of practice as to the right to a bill of exceptions because such right exists in other courts of the same grade, we said: "Those provisions, however, which affect only the record, jurisdiction, proceedings and practice of the municipal court are valid, since, by virtue of section 34 of article 4 of the constitution, section 29 of article 6 does not restrict the legislature

in prescribing the jurisdiction and practice of such municipal court." That the courts can make rules regulating practice has been held in many other States. *Gannon* v. *Fritz*, 79 Pa. 303; *Baker* v. *Blood*, 128 Mass. 543; *Baker* v. *State*, 84 Wis. 584; *Hughes* v. *Jackson*, 12 Md. 450; *Detroit, G. R., W. R. R. Co.* v. *Eaton*, 128 Mich. 495; *State* v. *Edwards*, 110 N. C. 511; *Texas Land Co.* v. *Williams*, 48 Tex. 602.

Section 22 of the Municipal Court act provides that no assignment of error in either the Appellate or Supreme Court in any case shall be allowed which shall call in question the decision of the municipal court in respect to any· matter pertaining to the practice in said court. Beyond question, under the authorities, the keeping of records in the municipal court pertains to the practice of that court. In declaring by this provision that in matters of practice in the municipal court the decision of that court should be final the General Assembly exercised the power given it by the constitutional amendment of 1904. This enactment is valid, even though statutes regulating the jurisdiction and practice of other courts of this State allow the decisions of those courts on matters of practice to be reviewed by the Supreme and Appellate Courts. · It has been repeatedly held that, where not in contravention of constitutional provisions, the legislature may provide that the decision of the *nisi prius* courts shall be final and conclusive. For example, originally the law regulating the jurisdiction of *nisi prius* courts made the judgments of that court in cases tried by jury final as to the facts. Subsequently this finality was taken away by statute and given to appellate tribunals. As to certain classes of cases the decision of the Appellate Court is final as to the facts, and the Supreme Court cannot disturb such finding of that court. The legislature could, if it saw fit, change the law and make the judgments of the trial court conclusive as to all matters of fact. This it can do as to cases tried in the municipal

court as well as in the circuit courts of the State. In Massachusetts it has been decided that a brief docket entry, while not technically a judgment record, would be held good when it contained all the material parts which would comprise the record and would be entitled to the same credit as a record written out at large. (*Pruden* v. *Alden,* 40 Mass. 184; *Davidson* v. *Slocumb,* 35 id. 464; *Read* v. *Sutton,* 56 id. 115.) In Maryland it was decided that abbreviated docket entries should be held of as high a grade as the record when written out, because they had been so held for many years. (*Boteler* v. *State,* 8 G. & J. 359.) The Federal courts in the District of Columbia held the same in *W., A. & G. Steam Packet Co.* v. *Sickles,* 24 How. 333. In Pennsylvania the method of keeping judicial records is on the docket. (*Ruggles* v. *Alexander,* 2 Rawle, 231.) A docket entry which contained all the essential entries of a judgment was held sufficient to support an appeal although the entry was informal. *Kuhlman* v. *Wieben,* 2 L. R. A. (N. S.) 666, and cases cited in note.

At common law a judgment was defined as the sentence of the law pronounced by the court upon the matter contained in the record. (3 Blackstone's Com. 395.) Freeman, in his work on Judgments, after mentioning the fact that the authorities were not all in harmony, says: "I think that from the cases this general statement may be safely made: That whatever appears upon its face to be intended as the entry of a judgment will be regarded as sufficiently formal if it shows (1) the relief granted, and (2) that the grant was made by the court in whose records the entry is written. In specifying the relief granted, the parties against and to whom it is given must, of course, be sufficiently identified." (1 Freeman on Judgments,— 4th ed.—sec. 50.) This court has said that no particular form is required in proceedings in court in order to constitute a judgment. (*Wells* v. *Hogan,* Breese, 337; *Foster* v. *Jared,* 12 Ill. 451; *Minkhart* v. *Hankler,* 19 id. 47.)

In the cases of *Faulk* v. *Kellums,* 54 Ill. 188, and *City of Alton* v. *Heidrick,* 248 id. 76, we held that the judgment entries were wrong, not because they were not in the English language, but because the law as existing did not authorize those forms to be treated as judgments.

I see no reason why the legislature cannot provide that the words "judgment for plaintiff for $100 and costs," shall mean the same thing as if written out in the customary form of judgment that has been used ever since courts were established in Illinois. If it can thus provide, it could also provide that abbreviations could be used, such as "Judgt." for "judgment" and "Plff." for "plaintiff," without contravening section 18 of the schedule of the constitution of 1870. If that be so, then it must follow that short or abbreviated forms of judgments, not inconsistent with statutory rules or the constitution, when the meaning is clearly shown by the context, can be authorized by rules of court. In England, in practice, the proceedings are seldom entered on the judgment· roll unless it is absolutely necessary to do so in order to bring error, for the purpose of evidence, or the like. (Smith's Actions at Law,— 11th ed.—1873, p. 192.) Section 62 of the Municipal Court act, as to amplifying proceedings, is similar to and doubtless based on this·old English practice.

Under the reasoning of the authorities the practice of using abbreviations must apply in the same way to. writing judgments as to other writings forming part of the record or proceedings of a case.

The opinion says: "Such an entry as 'Fndg deft G withh prem descr in complt; judg on fndg & c.' cannot be said to have been made in the English language. It is simply a jumble of words and letters and conveys no meaning whatever to an English-speaking person." Conceding for the sake of the argument that some of these abbreviations, standing alone, are subject to criticism as not being fairly intelligible, it can hardly be fairly said that judges,

attorneys and officers of courts and those familiar with judicial proceedings would not easily understand these abbreviations in the connection in which they are used. Courts always seek the meaning of words or abbreviations from their context. This is not only the common sense view but has always been the law.

An inspection of this record shows that this was an action of forcible entry and detainer, hence a lawyer, judge or anyone familiar with court proceedings would expect words to be used which would be appropriate to that action. The words that could properly be used in writing up a judgment in that action are comparatively few and are familiar to every judge and practicing lawyer. The abbreviation "fndg.," it can readily be seen, could be the abbreviation of not more than four or five words, and the only one that could properly be used would be "finding," as none of the other words for which this could be an abbreviation are used in writing out a forcible entry and detainer judgment. The abbreviation "deft." has always been used by the members of the legal profession, clerks of courts and others who are familiar with court matters, as meaning "defendant." No one would take it to mean anything else. The abbreviation "G" might be fairly subject to criticism, but there are only two findings or verdicts in a forcible entry and detainer action,—"guilty" and "not guilty." Does it not necessarily follow that to every judge and lawyer the abbreviations "fndg deft G," when part of such a judgment, mean "finding defendant guilty?" What could the abbreviations "withh prem descri in complt" mean in this entry to one familiar with this action except "withholding premises described in complaint?" A defendant in a forcible entry and detainer suit cannot properly be found guilty of anything except of withholding premises described in the complaint. The abbreviations "judg on fndg" can not reasonably mean anything else except "judgment on

finding." The abbreviation "judg." has been recognized by this court in *Myers* v. *Shoneman, supra*. The two abbreviations of "fndg." in this abbreviated judgment entry from the context corroborate the conclusion that they mean "finding." While possibly "G" for "guilty" and "withh" for "withholding" are subject to criticism, I can reach no other conclusion than that from the connection in which they are used they would be understood by all lawyers, judges, clerks of courts and others acquainted with judicial proceedings.

Furthermore, if these abbreviations are not in conformity with law or proper rules of practice, still, in my opinion, plaintiff in error should not be permitted to take advantage of that fact in this proceeding. The rendition of the judgment is a judicial act and the entry is a ministerial act. Though the judgment be not entered at all, it is still none the less a judgment. (1 Black on Judgments, sec. 106.) That which the court performs or orders to be performed judicially is not to be avoided by the action or want of action of the judges or other officers in their ministerial capacity. It is therefore not indispensable to the validity of an execution, and a sale made thereunder, that the judgment should have been actually entered before the writ issues. (1 Freeman on Judgments,—4th ed.—sec. 38.) Our statute as to clerks of courts recognizes the validity of the judgment before it is entered by the clerk. Section 14 of chapter 25 (Hurd's Stat. 1909, p. 513,) provides that clerks "shall enter of record all judgments, decrees and orders of their respective courts, before the final adjournment of the respective terms thereof, or as soon thereafter as practicable." An execution is not void because it is issued and delivered to the sheriff before the judgment is actually entered upon the records of the court. (*Weigley* v. *Matson,* 125 Ill. 64.) It is a common practice for clerks of courts to make and certify a transcript, if requested, with-

out waiting for the formal entry of the judgment or decree upon the record. The entry of a judgment *nunc pro tunc* is always proper when a judgment has been rendered but the clerk has failed or neglected to copy it into the record. The only qualification of this rule is that there be something appearing on the record upon which to base the order; that it cannot be done upon parol testimony or upon the mere memory of the clerk. *Metzger* v. *Morley, supra;* Freeman on Judgments, sec. 61.

It has always been held that the minutes of a judge or clerk, though not properly a part of the records, are sufficient to authorize the entry of a judgment at a subsequent term. As has been seen, this court has frequently held that it will take judicial notice of the meaning of various abbreviations, and that as to other abbreviations parol testimony is admitted to explain their meaning. (See, also, *McChesney* v. *City of Chicago,* 173 Ill. 75; 1 Am. & Eng. Ency. of Law,—2d ed.—99.) It is well known that the minutes kept by the judges and clerks are generally kept wholly or in part in abbreviated words.

This court has consistently held that the minutes or notes of judges or clerks, even though in abbreviated words, can be used to correct a record at a subsequent term and the order entered *nunc pro tunc.* Under the rulings of this court in *Forquer* v. *Forquer,* 19 Ill. 68, *McCormick* v. *Wheeler, Mellick & Co.* 36 id. 114, *People* v. *Quick,* 92 id. 580, *Metzger* v. *Morley, supra,* and many other cases, it seems to me that the abbreviated docket entry above set out would be readily understood by judges, lawyers and others familiar with legal proceedings, and would, therefore, be amply sufficient to authorize an order or judgment to be entered *nunc pro tunc* at a subsequent term as of the date when said abbreviated entry was made. The transcript before the court states that the abbreviated docket entry was expanded by the order of court. The court hav-

ing examined the minutes as entered by the clerk, and his own minutes, ordered the entry of this judgment *nunc pro tunc*. No fault is found with the form of the *nunc pro tunc* judgment.

On reason and authority, therefore, the ruling of the trial court on the motion to amend the record was, in my judgment, proper, and should not be permitted to be questioned on this record.