## Mabel Frances Paulin, Defendant in Error, v. William A. Paulin, Plaintiff in Error.

## Gen. No. 19,646.

1. DIVORCE, § 106*—*when alimony decree final.* Although a decree for alimony may be varied by the court which renders it, yet where such a decree divorces the parties, decrees alimony and settles the question of the custody of a child of the marriage, it is final until changed by the court rendering it, and final as to every other court.

2. DIVORCE, § 133*—*when foreign alimony decree enforceable.* A decree for alimony rendered by the courts of a foreign State is within the application of the full faith and credit clause of the Constitution of the United States, which confers jurisdiction to enforce such decree upon the courts of the States other than that by whose courts the decree was rendered, provided the decree sought so to be enforced is final and not temporary in its nature.

3. DIVORCE, § 132*—*when action lies on alimony decree.* Where a decree for alimony finds a sum of money to be due and orders it to be paid absolutely and at all events, and not upon any contingency, such sum becomes by the force of the decree a debt, liquidated, fixed and certain, and completely within the rules which permits actions at law to be brought on decrees, notwithstanding the fact that the decree relied on may order things other than the payment of money to be done.

4. DIVORCE, § 132*—*when Municipal Court has jurisdiction over action on alimony decree.* An action to recover money found to be

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

due by a decree for alimony is a civil action, and within the jurisdiction of the Municipal Court of Chicago as a fourth-class action.

5. MUNICIPAL COURT OF CHICAGO, § 13*—*when affidavit of defense properly stricken.* Where an affidavit of defense alleges no facts which, if proven, would have constituted a meritorious defense to the action, it is not error to strike the affidavit, and assess plaintiff's damages.

6. RECORDS, § 7*—*when clerk's minutes sufficient.* It is not necessary that the minutes of the clerk of a court should contain all the essentials of a judgment, or that such minutes should consist of English words written out at length, and be clearly intelligible to every person acquainted with the English language, but it is sufficient if their meaning is apparent to the officers of a particular court, for the reason that such minutes are intended for the information of such officers alone and not for the information of persons generally.

7. JUDGMENT, § 238*—*when default properly entered nunc pro tunc.* An entry of notation of default *nunc pro tunc* is proper where such notation appears from the clerk's minute book to have been properly directed when the judgment was ordered, but which by the clerk's error was omitted in making up the record, for the reason that such entry adds nothing to the judgment as originally directed but merely corrects an error of the clerk in failing to transcribe the notation.

8. EVIDENCE, § 4*—*when clerk's minutes judicially noticed.* The minute book of the clerk of a court is part of the archives of the court of which the judges thereof may properly take judicial notice.

9. APPEAL AND ERROR, § 1472*—*when admission of evidence harmless.* While evidence of clerks as to the minute book of the clerk of a court was unnecessary, yet *held* not prejudicial error to admit it.

Error to the Municipal Court of Chicago; the Hon. HUGH R. STEWART, Judge, presiding. Heard in this court at the March term, 1915. Affirmed. Opinion filed November 15, 1915.

ROSENTHAL & KURZ, for plaintiff in error.

JOSHUA R. H. POTTS, for defendant in error.

MR. JUSTICE HOLDOM delivered the opinion of the court.

Plaintiff sued the defendant for money due and unpaid for alimony decreed plaintiff in a divorce action between the parties to this cause, lately pending in the Court of Insolvency of Hamilton County in the State

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

of Ohio. The decree also severed the matrimonial bond. The final seven instalments due by the divorce decree, with interest from the dates they were respectively due, together amount to the sum of $747, for which plaintiff obtained judgment.

Defendant's affidavit of defense was on motion of plaintiff stricken from the files, and the court assessed plaintiff's damages and gave judgment against defendant for the amount of the claim. Defendant brings the record here for review and assigns errors which in their essence attack the jurisdiction of the Municipal Court to take cognizance of the cause, the striking of defendant's affidavit of defense from the files, the court's assessing the damages and not submitting the same for assessment to a jury and entering a *nunc pro tunc* order amending the judgment record.

If plaintiff is entitled to recover at all, the defendant does not dispute the amount of the judgment.

That the decree of the Insolvency Court of Hamilton County was final is not open to dispute. It settled all the questions involved in the cause, divorced the parties, decreed alimony to plaintiff and settled the question of the custody of the child of the marriage. It was an appealable order because of its finality. True it is that every decree for alimony is subject to be varied at a subsequent time by the court entering the decree, yet no other court can disturb it, and until such court does so, it remains fast, firm and final.

That a decree for alimony entered in a sister State can be enforced in the courts of this State is no longer to be doubted. The full faith and credit clause of the National Constitution is applicable to such a case and confers jurisdiction upon our courts to entertain and enforce such a decree, the essential requirement being that the decree for alimony shall be one of finality and not temporary, and such is the nature of the decree in the record.

As said in *Dow v. Blake,* 148 Ill. 76: "We think that an action can be maintained in one State upon a final decree for alimony rendered in another State," and the court cite Bishop on Marriage and Divorce, vol. 2, sec. 847, and quote the following:

"A decree for alimony, there being a competent jurisdiction, is a record to which, under the Constitution of the United States must be given full faith and credit in every other State." *Britton v. Chamberlain,* 234 Ill. 246, adheres to the same doctrine. It is said in *Blattner v. Frost,* 44 Ill. App. 580: "While the decree sued upon in this case did order the doing of other things besides the payment of money, yet the sum of $1,400 is distinctly found to be due and ordered to be paid, not upon any contingency, but absolutely and at all events. Such sum became per force of the decree a debt, liquidated, fixed, certain; completely within the rule which permits actions at law to be brought upon decrees." This language is equally applicable to the decree in suit. We think the Municipal Court had jurisdiction of the cause as a fourth-class case. It is a civil action. *Konow v. Nichols,* 128 Ill. App. 409.

As defendant's affidavit of defense did not state any fact which, if proven, would have justified the court in holding that it constituted a meritorious defense in bar of the action, the court did not err in striking it from the files. Neither in this condition of the record was it error for the court to assess plaintiff's damages. *Mann v. Brown,* 182 Ill. App. 1.

At the time the damages were assessed and judgment entered, the record did not contain an order defaulting defendant for want of a sufficient affidavit of merits. For this defect, and without passing upon the merits of the action, this court reversed and remanded the cause, but subsequently recalled the mandate and granted a rehearing.

The motion of plaintiff to correct the record in this regard was granted and the record corrected accordingly by noting the default of defendant. It is now contended by defendant that the trial judge erred in doing so, as he had no sufficient memorial minute before him from which the record could be corrected. The memorial minute, upon which the court acted, consisted of the entry made by the minute clerk in his minute book, to the correctness of which the minute clerk testified. These minutes were made by the clerk in abbreviated form. It is now urged by defendant that such abbreviations were not in the English language and therefore not sufficient evidence upon which to base the *nunc pro tunc* order, and that *Stein v. Meyers*, 253 Ill. 199, is controlling of such contention. On the other hand, plaintiff distinguishes the *Stein* case, *supra*, from the one at bar and cites *People v. Petit*, 266 Ill. 628, as sustaining the validity of the *nunc pro tunc* order.

We are of the opinion that the abbreviations in the case at bar are much more like the abbreviations in the *Petit* case, *supra*, than in the *Stein* case, *supra*. We have examined with care the abbreviations in the minute clerk's book and are satisfied that all the material abbreviations are readily understandable by lawyers, if not by the average well informed layman. They are not the unintelligible jumble of letters found in the *Stein* case and condemned by the Supreme Court. In the *Petit* case the judge refused to allow the record to be written from the minutes made by the clerk in abbreviated form and the Supreme Court says: "The constitutional provision has no reference to such minutes as those in question here, which are no part of the record but were memoranda from which the record might be made. They are such abbreviations as are frequently used by judges and clerks for making minutes of the proceedings as a guide to indicate to the clerk what the judgment of the court was and to

enable him to write out the formal judgment. It is not necessary that such minutes should contain all the essentials of a judgment, should consist of English words written out at length, or should be clearly intelligible to every person acquainted with the English language. They are not intended for every person's information but for the information of the officers of that particular court, and it is sufficient if their meaning is apparent to such officers." And we say here, as said by the Supreme Court in the *Petit* case, *supra:* "It is apparent from an inspection of these minutes that they were sufficient to enable the clerk to write out the formal judgment of the court." As said in *Tisdale v. Davis & Rankin Bldg. & Mfg. Co.,* 182 Ill. App. 31, an "inspection of the judgment order above set forth does not disclose to this court the omission of any element essential to its validity."

The *nunc pro tunc* order in controversy in no manner added anything to the judgment of the court as originally directed, but simply corrected the error of the clerk in not transcribing from the minute book the judgment which the court had, as appears by that minute book, directed to be entered. The purpose of the trial judge in making the *nunc pro tunc* order was to make a record of an order which the court had made at a previous time, but which, through an error of the clerk, had not been recorded. In the instant case, if the clerk had done his whole duty at the time the order and judgment was transcribed into the record, it would have appeared in just the same form it did after the entry of the *nunc pro tunc* order. *People v. Wilmot,* 254 Ill. 554; *People v. Rosenwald,* 266 Ill. 548; *Zimmer v. Lyon & Healy,* 190 Ill. App. 642.

The clerk's minute book was a part of the archives of the Municipal Court, of which the judges thereof might take judicial notice. While the evidence of the clerks who testified concerning the same was unnecessary, yet no harm to defendant resulted.

Many other objections of a purely technical char-
acter are made by defendant but we do not deem them,
in the light of what we have already said, as being
pertinent or as warranting further discussion.

We do not find in the record any error justifying a
reversal of the judgment of the Municipal Court, and
it is therefore affirmed.

*Affirmed.*